# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| MARTIN E. O'BOYLE and CATHERINE O'BOYLE, both individually and as General Partners in New Midland Plaza Associates, a Tennessee General Partnership, Commerce Partnership, No. 1147, a Florida General Partnership, and Partnership No. 1171, a Florida General Partnership, NEW MIDLAND PLAZA ASSOCIATES, COMMERCE PARTNERSHIP NO. 1147 and COMMERCE PARTNERSHIP NO. 1171, Florida General Partnerships,<br><br>Plaintiffs,<br><br>v.<br><br>SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., ROSS D. COOPER and MARK S. GUBERMAN,<br><br>Defendants. | No. 3:09-CV-00169 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman"), Ross D. Cooper ("Cooper") and Mark S. Guberman ("Guberman") (collectively "Defendants"), by and through counsel, submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiffs commenced suit in Tennessee State Court in 1999 and were represented by David Braverman, Esquire of Philadelphia and Kizer & Black. In that suit, Plaintiffs alleged that

their bank had unlawfully foreclosed on an unpaid mortgage as part of a conspiracy to deprive them of their Tennessee shopping plaza. Between 2001 and the latter part of 2004, the Shulman firm, specifically Cooper and Guberman, participated with the aforementioned attorneys in the representation of Plaintiffs. As outlined in detail below, in December 2004, the court dismissed all Plaintiffs' substantive claims on summary judgment. In March 2005, Shulman formally withdrew by leave of court. Kizer & Black and Braverman continued to represent Plaintiffs. In September 2005 (six months after Shulman's withdrawal), the trial court imposed legal fees and costs due under the loan documents to the lender against Plaintiffs in an amount in excess of $1.5 million. Thereafter, Plaintiffs filed an appeal that they eventually dismissed.[1].

Plaintiffs commenced a legal malpractice action against David Braverman, Esquire, lead counsel in the underlying litigation in December 2007, alleging that his malpractice caused the dismissal of their claims and the imposition of the so-called "sanctions." Judge Joseph H. Rodriguez, sitting in the United States District Court for the District of New Jersey, under Docket No. 08-CV-00553, dismissed that lawsuit on a Rule 12(b)(6) motion. Significantly, the judge concluded that the Tennessee one-year statute of limitations barred all claims against Braverman. An appeal of that decision is pending before the United States Court of Appeals For The Third Circuit.

Plaintiffs then commenced suit against Shulman, Ross Cooper and Mark Guberman in the Superior Court of New Jersey, Atlantic County, making essentially the same allegations set forth in the instant matter. Defendants removed the case to the United States District Court for the District of New Jersey. The matter was assigned to Judge Rodriguez and, thereafter, before a

---

[1] In November 2006, the Court also imposed sanctions against O'Boyle, which were subsequently withdrawn in January 2007.

2

K HPO 228328 v1
2914265-000001 6/29/2009

motion to dismiss could be filed, Plaintiffs voluntarily dismissed the New Jersey action and filed the instant action in this Court.

The current action is time barred under the Tennessee statute of limitations against each and every defendant. Additionally, Plaintiffs have failed to plead diversity of citizenship and therefore this Court has no jurisdiction at this time.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A. Parties and Jurisdiction

Plaintiffs Martin O'Boyle and Catherine O'Boyle, individually and as general partners in New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171 and New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171 (collectively "Plaintiffs"), filed this lawsuit on April 20, 2009 against Defendants, Shulman, Cooper and Guberman. (See Compl. ¶¶ 1-9, [Doc. 1].)

Plaintiffs' basis for the Court's jurisdiction is diversity of citizenship although Plaintiffs have failed to allege the citizenship of any of the parties except Shulman. (See id.) Plaintiffs allege that Martin O'Boyle and Catherine O'Boyle are New Jersey residents, New Midland Plaza is a Tennessee partnership, and Commerce Partnership No. 1147 and Commerce Partnership No. 1171 are Florida partnerships. (See id. ¶¶ 2-6.) Plaintiffs further allege that Cooper and Guberman are Maryland residents. (See id. ¶¶ 8-9.) Diversity of citizenship may well exist but this is not evident from the pleadings herein.

### B. Background Regarding the Underlying Litigation

Plaintiffs allege that they entered into a retainer agreement with Defendants to provide legal services in June/July 2001. (Compl. ¶ 10.) "Plaintiffs sought the legal representation and expertise of the Defendants for the purpose of litigating a lawsuit against First Union National Bank and other defendants in the Circuit Court for Blount County, Tennessee . . . ." captioned

3

New Midland Plaza Associates, et al v. First Union National Bank, et al. (the "Underlying Litigation" or "Blount County Matter"). (Id. ¶¶ 11, 16.) At the time Plaintiffs retained Defendants, the Blount County Matter had already been ongoing for more than two years. (See Ex. A, Rule Docket.) Plaintiffs were represented by lead counsel David Braverman, Esquire and his firm ("Braverman") from Philadelphia, Pennsylvania with local counsel David Black, Esquire and Jerry Cunningham, Esquire of Kizer & Black of Maryville, Tennessee both before and after Shulman's retention and withdrawal in the Blount County Matter. (See Ex. A, Rule Docket; Ex. B, 3rd Am. Compl.)

Plaintiffs allege that First Union National Bank and other defendants [in the Underlying Litigation], engaged in "a pattern and practice of wrongful conduct" and sought relief "for the misappropriation of more than $680,000 of New Midland funds, breach of contract and declaratory and injunctive relief." (Compl. ¶ 10.) Plaintiffs alleged in the Underlying Litigation that "New Midland was the owner of a 365,000 square foot shopping center in Alcoa, Blount County, Tennessee" and that First Union, Alcoa Calderwood, LLC ("Alcoa") and other defendants aimed "to cause the bankruptcy and financial demise of New Midland, and to wrest control of the [shopping] Center from [P]laintiffs." (Ex. B, 3rd Am. Compl. ¶¶ 1, 15.)

In the Underlying Litigation, pursuant to the Circuit Court for Blount County's March 14, 2003 order, Robert P. Murrian was "appointed Special Master to report to the Court concerning motions to dismiss and motions for summary judgment." (See Ex. C, October 23, 2003 Special Master's Report at 1-2.) After considering the Special Master's October 23, 2003 report and other reports issued by the Special Master, Circuit Judge W. Dale Young ordered on December 15, 2004 that "all Plaintiffs' damages claims must be dismissed because . . . all of Plaintiffs' substantive claims must be dismissed." (Ex. D, December 15, 2004 Order at 12.)

4

Subsequently, Cooper and the Shulman firm filed a motion to withdraw as counsel with Plaintiffs' consent (Guberman never had his appearance entered). (See Ex. E, Motion to Withdraw.) By court order dated March 15, 2005, Cooper and Shulman's motion to withdraw was granted. (See Ex. F, March 15, 2005 Order.) Plaintiffs continued to be represented by Braverman and the Kizer & Black firm. (See Ex. F, March 15, 2005 Order; Ex. A, Rule Docket.)

On September 27, 2005, after motion practice and the issuance of several Special Master's reports on Alcoa's motion for attorneys' fees and costs based upon the contractual loan documents between New Midland and First Union/Alcoa and Alcoa prevailing in the Blount County Matter, the court ordered Plaintiffs to pay attorneys' fees and costs to Alcoa in the amount of $1,629,872.40. (See Ex. G, September 27, 2005 Order; Ex. H, February 8, 2005 Special Master's report; Ex. I, September 22, 2005 Special Master's report.) These included Alcoa's fees and costs in defending its rights under the loan documents in New Midland's bankruptcy proceedings, the reopening of New Midland's bankruptcy proceedings and defending the Blount County Matter. (See Ex. I, September 22, 2005 Special Master's report; Ex. J, February 17, 2005 Special Master's report.)

The order provided that the sum of Plaintiffs' money being held by the court since March 18, 2005 in the amount of $1,540,559.00 be released directly to Alcoa and that the remainder of the money owing be paid by 5:00 p.m. that same evening. (See Ex. G, September 27, 2005 Order; Ex. K, September 23, 2005 Motion for Disbursement.) Plaintiffs' counsel at the time, Kizer & Black and Brian Flaherty, Esquire of Wolf, Block, Schorr and Solis-Cohen, LLP ("Wolf Block"), filed a motion to alter or amend the order with regards to payment of the difference

5

between the amount in the registry and the amount owed. (See Ex. L, September 27, 2005 Motion to Alter.)

On December 14, 2005, the Court denied Plaintiffs' Motion to Set Aside, Alter or Amend the Order Entered on December 15, 2004. (See Ex. M, December 14, 2005 Order.) The Court further ordered "that judgment is entered in favor of Defendants [in the Underlying Litigation] and against Plaintiffs on all claims and that the Plaintiffs' Third Amended Complaint is dismissed with prejudice." (Id.)

After entering judgment and dismissing Plaintiffs' Third-Amended Complaint, on November 2, 2006, the Court ordered sanctions against Plaintiff Martin O'Boyle personally to the defendants in the amount of $1,250,000.00. (See Ex. N, January 29, 2007 Order.) After a stipulation of dismissal was filed, on January 29, 2007, the Court withdrew the November 2, 2006 order of sanctions against Plaintiff Martin O'Boyle personally payable to the defendants with no objection from the defendants. (See Ex. A, Rule Docket; Ex. N, January 29, 2007 Order.) In light of the withdrawal, the November 2006 sanctions order cannot possibly provide a basis for the injuries alleged in the present lawsuit.

### C. Plaintiffs' Allegations

Plaintiffs allege that Defendants were negligent in: (1) prosecuting the action pursuant to a flawed theory of damages; (2) advising Plaintiffs their damages would include loss of use from monies Plaintiffs had to use for litigation; (3) failing to advise Plaintiffs of responsibility for legal fees or sanctions; (4) waiving one of Plaintiffs' two civil conspiracy claims; (5) failing to properly prepare the Plaintiffs' experts for deposition; (6) failing to review and correct the expert testimony; (7) failing to properly respond to First Union's motion for summary judgment; (8) prosecuting the Blount County Matter so that the Court was compelled to render $1.5 million in sanctions against Plaintiffs; and (9) failing to properly advise Plaintiffs of: the outcome, the

6

K HPO 228328 v1
2914265-000001 6/29/2009
Case 3:09-cv-00169   Document 13   Filed 06/29/09   Page 6 of 20   PageID #: 59

summary judgment motion, pursuing litigation, settlement, and the tactics of the defendants in the Underlying Litigation.[2] (See Compl. ¶ 19.) "Plaintiffs allege that as a direct and proximate result of Defendants' individual and combined misrepresentations and professional negligence, Plaintiffs' action was summarily dismissed and sanctions imposed personally on Plaintiff Martin O'Boyle." (Id. ¶ 20.)

### D. The Tolling Agreement

Plaintiffs further allege "that the filing of this action remains timely and within the applicable statute of limitations by virtue of a tolling agreement entered into between Plaintiffs and Defendants prior to the expiration of any applicable statute of limitation and/or repose." (Id. ¶ 25.)

On October 19, 2006, Shulman and Cooper entered into a tolling agreement with Plaintiffs arising out of Defendants' representation of Plaintiffs in the Blount County Matter (Guberman never entered any tolling agreement). (See Ex. O, Tolling Agreement.) The tolling agreement provided that the period between the date of the agreement and the termination date is not to be included in determining the applicability of any statute of limitations. (See id.) It further provided: "[e]ach undersigned party represents, warrants and states that all legal action necessary for the effectuation and execution of this agreement has been validly taken and that the individuals who signatures appear on behalf of each party are fully authorized to execute this Agreement on behalf of their respective parties." (Id.) A representative or representatives of New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171 executed the tolling agreement for Plaintiffs. (See id.) Martin Levine, Esquire executed the tolling agreement on behalf of Shulman and Cooper, who was no longer employed by

---

[2] Defendants deny all of Plaintiffs' claims of negligence but recognize that the Court must accept the facts as pled. See Sanderson v. HCA - The Healthcare Co., 447 F.3d 873, 876 (6th Cir. 2006).

Shulman, executed the agreement on his own behalf. (See id.; Ex. P, Cooper SEC Filings dated July 5, 2006, October 24, 2006 and October 22, 2007.) The agreement was to terminate on October 19, 2007. (See Ex. O, Tolling Agreement) Guberman, who also no longer was employed by Shulman, was not a party to the tolling agreement at any time. (See id.)

William Ring, Esq. on behalf of by New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171 and Martin Levine, Esquire on behalf of Shulman extended the tolling agreement six times. (See Ex. Q, Tolling Agreement Extensions.) The last agreement to extend the tolling agreement expired on February 28, 2009. (See id.) However, Cooper and Guberman were not parties to the extensions. (See id.)

E. **Related Litigation**

Prior to this litigation, Plaintiffs filed suit against Braverman in the Superior Court of New Jersey on December 14, 2007 making similar claims of legal malpractice based upon his representation of Plaintiffs in the Underlying Litigation. Braverman removed the case to the United States District Court for the District of New Jersey, Docket No. 1:08-cv-00553-JHR-JS, and filed a Motion to Dismiss. (See Ex. R, Opinion and Order Dated August 12, 2008.) The Court granted Braverman's motion concluding that Tennessee's one-year statute of limitations governed and barred Plaintiffs' action as untimely. (See Ex. R, Opinion and Order Dated August 12, 2008.) Plaintiffs appealed this decision but the United States Court of Appeals for the Third Circuit has not rendered its decision. (See Ex. S, Court of Appeals Letter Dated May 22, 2009.)

Plaintiffs then commenced suit against Shulman, Cooper and Guberman in the Superior Court of New Jersey, Atlantic County, under Docket No. ATL-L-855-09, making essentially the same allegations set forth in the Braverman suit and the instant matter. Defendants removed the case to the United States District Court for the District of New Jersey, under Docket No. 1:09-CV-1816. (See Ex. T, Filed Notice of Removal.) The matter was assigned to Judge Rodriguez

(who had dismissed the suit against Braverman) and, thereafter, before a motion to dismiss could be filed, Plaintiffs voluntarily dismissed the New Jersey action. (<u>See</u> Ex. U, Dismissal Notice.)

## STANDARD FOR MOTION TO DISMISS

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. FED. R. CIV. P. 12(b)(6). In ruling upon a motion to dismiss, "the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." <u>United States v. Community Health Sys., Inc.</u>, 51 F.3d 493, 502 (6th Cir. 2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Id.</u> The court is not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 554 (2007).

It is also well settled in the Sixth Circuit that a statute of limitations defense can be raised in a Rule 12(b)(6) motion to dismiss. <u>See</u> <u>Rauch v. Day and Night Manufacturing Corp.</u>, 576 F.2d 697, 702 (6th Cir. 1978). While a court's analysis of a Rule 12(b)(6) motion to dismiss should primarily focus on the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may be taken into account." <u>Doe v. Sexsearch.com</u>, 551 F.3d 412, 416 (6th Cir. 2008). Even where a document is not attached to a complaint, the Court may consider the document where it is referred to in the complaint and is central to a plaintiff's claim. <u>Khan v. Lincoln Benefit Life Co.</u>, 2006 WL 1006804, *2 (M.D. Tenn., April 14, 2006); <u>see</u> also <u>Greenburg v. Life Ins. Co. of Va.</u>, 177 F.3d 507, 514 (6th Cir. 1999). Otherwise, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." <u>Weiner v. Klais & Co.</u>, 108 F.3d 86, 89 (6th Cir. 1997).

9

Similarly, when a Rule 12(b)(1) motion to dismiss based upon lack of subject matter jurisdiction questions the sufficiency of the pleading, a trial court takes the allegations in the complaint as true. Ohio Nat. Life Ins. Co. v. U.S., 922 F.2d 320, 325 (6th Cir. 1990).

Here, Plaintiffs' complaint, in conjunction with public records and the tolling agreements referenced in that pleading, demonstrate that the applicable statute of limitations bars Plaintiffs' claims. In addition, Plaintiffs have failed to plead diversity of citizenship properly.

## LEGAL ARGUMENT

I. **PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE ALL CLAIMS AGAINST DEFENDANTS ARE BARRED BY THE STATUTE OF LIMITATIONS AND THUS THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

   A. **Plaintiffs' Claims are Subject to Tennessee's One Year Statute of Limitations for Legal Malpractice Claims**

In diversity actions, federal courts are instructed to use the choice of law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg., 313 U.S. 487, 496 (1941). Because this action was initiated in the United States District Court for the Eastern District of Tennessee, the Court must follow Tennessee's choice of law rules. In tort cases, Tennessee has rejected the strict *lex loci delicti* rule for determining choice of law questions and replaced it with the more logical "most significant relationship approach." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). "Under that test, a court applies the local law of the state where the injury occurred unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied." Scott v. AMEC Kamtech, Inc., 583 F.Supp.2d 912, 919 (E.D. Tenn. 2008). "Among the factors to consider are: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence or place of business of the parties; and (4) the

place where the relationship, if any, between the parties is centered." In re Del-Met Corp., 32 B.R. 781, 823 (Bankr. M.D. Tenn. 2005).

Plaintiffs assert that the alleged injury to Plaintiffs, dismissal of the Tennessee litigation and the imposition of sanctions, occurred in Tennessee. Plaintiffs allege in their complaint that Defendants are liable for professional negligence in "litigating a lawsuit . . . in the Circuit Court for Blount County, Tennessee (Compl. ¶ 11) and as a proximate result of Defendants' negligence, "Plaintiffs' [underlying] action was summarily dismissed and sanctions imposed personally on Plaintiff Martin O'Boyle" (id. ¶ 20). In light of the foregoing, it is undisputed that Tennessee law must be applied to the matter at hand. See Foulke v. Dugan, 187 F. Supp. 2d 253, 257 (E.D. Pa. 2002) (the injury of being procedurally barred in Pennsylvania's state courts occurred in Pennsylvania); (See also Ex. R, Opinion and Order Dated August 12, 2008 at 22.)

No other state has a more significant relationship to the occurrence and parties with respect to this issue. The alleged negligent conduct must be deemed to have occurred in Tennessee as it involved prosecution of a Tennessee case. See David B. Lilly Co., Inc. v. Fisher, 18 F.3d 1112, 1119 (3d Cir. 1994) (holding that Delaware law would apply because an attorney's legal services were "rendered" in Delaware, even though the attorney's negligent work was physically performed in other states); (see also Ex. R, Opinion and Order Dated August 12, 2008 at 23-24.)

Next, the parties' relationship was centered in Tennessee. Again, Plaintiffs alleged Defendants were retained for the purpose of "litigating a lawsuit . . . in the Circuit Court for Blount County, Tennessee." (Compl. ¶ 11.) The entire relationship centered around the Underlying Litigation in Tennessee. See Lilly Co., 18 F.3d at 1120 (where relationship spanned

11

several states, the attorney-client relationship was centered in Delaware where purpose of client was to acquire Delaware corporation.)

Finally, Defendants' contacts as residents of Maryland or Plaintiffs' contacts with any other state, whether it be Florida as the alleged place of incorporation of the partnership defendants or New Jersey where the individual plaintiffs reside, are inconsequential as none of these states has a substantial interest in this matter. Tennessee's interest in regulating an attorney's conduct within its borders outweighs a state's interest in regulating conduct where alleged malpractice occurs elsewhere. See Crossland Sav. FSB v. Rockwood Ins. Co., 692 F.Supp. 1510, 1512 (S.D.N.Y. 1988) (holding that a state's interest in regulating the conduct that occurs within its borders outweighs another state's interest in regulating its licensed professionals); Jacobsen v. Oliver, 201 F.Supp.2d 93, 99-100 (D.D.C. 2002) (holding that the District has the "overriding interest in regulating conduct of attorneys who practice within its borders"); (see also Ex. R, Opinion and Order Dated August 12, 2008 at 25.)

Accordingly, Tennessee law must be applied to the issue of which state's statute of limitations applies to the instant matter.

**B.    Plaintiffs' Claims Against All Defendants are Time-Barred**

Under Tennessee law, whether grounded in breach of contract or tort, the statute of limitations in actions against attorneys for malpractice is one year from the date that the cause of action accrues. T.C.A. § 28-3-104(a)(2); Smith v. Petkoff, 919 S.W.2d 595, 596 (Tenn. Ct. App. 1995). This limitation of actions requires strict adherence. As the Tennessee courts have held, "[t]he peace of society requires that rights shall be enforced in a reasonable time, and that they shall be barred if they are not." Cherry v. Williams, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (citations omitted).

12

Unquestionably, the relevant time period is a one year statute of limitations. In determining when a legal malpractice action accrues for statute of limitations purposes, a court must apply a two-prong "discovery rule." This rule provides that the plaintiff must (1) suffer a legally cognizable injury and (2) have actual or constructive knowledge of the injury. John Kohl & Co., P.C. v. Dearborn & Ewing, 977 S.W.2d 528, 532 (Tenn. 1998).

1. **Plaintiffs suffered a legally cognizable injury or actual injury more than one-year prior to filing this lawsuit.**

The first element requires that "the plaintiff [] suffer a legally cognizable injury or actual injury as a result of defendant's negligence." Smith, 36 S.W.3d at 597. The Tennessee Court of Appeals has held that the term, "legally cognizable" is not synonymous with "final disposition." Hartman v. Rogers, 174 S.W.3d 170, 174 (Tenn. Ct. App. 2005). "Actual injury is said to exist when the plaintiff is forced to take some action or otherwise suffer 'some actual inconvenience' such as incurring an expense…or has suffered the loss of a right, remedy, or interest or the imposition of a liability." Id. "It may be stated as invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damages…." State v. McClellan, 85 S.W. 267, 270 (Tenn. 1905). Furthermore, a plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong. See Carvell v. Bottoms, 900 S.W.2d 23, 28 (Tenn. 1995); Security Bank & Trust Co. v. Fabricating, Inc., 673 S.W. 2d 860, 864-65 (Tenn. 1983).

Here, to the extent they suffered any injuries, Plaintiffs allegedly suffered a legally cognizable injury when the Circuit Court dismissed all of their claims on December 15, 2004, after review of numerous Special Master's reports. The Plaintiffs again allegedly suffered a legally cognizable injury on September 27, 2005 when the Circuit Court imposed contractual

13

attorneys' fees and costs on Plaintiffs in the amount of $1,629,872.40 payable immediately after the issuance of the September 22, 2005 Special Master's report that concluded Plaintiffs owed Alcoa attorney's fees and costs associated with the loan documents, which included the attorney's fees and costs in defending this litigation. This resulted in the Court releasing Plaintiffs' money in excess of $1.5 million dollars held in the registry of the Court to Alcoa and ordering Defendants to pay the additional money to Alcoa by 5:00 p.m. that same day. Thus, to the extent there was any injury, the Plaintiffs suffered a legally cognizable injury no later than September 27, 2005[3].

### 2. **Plaintiffs had actual or constructive knowledge of an injury when the Circuit Court dismissed their claims dismissed on December 15, 2004 and imposed sanctions on September 27, 2005.**

Under the second element, commonly referred to as the "knowledge component," the plaintiff must show that given the facts of the particular case, a reasonable person would be put on notice that an injury has been suffered as a result of wrongful conduct. Smith, 919 S.W.2d at 597; see Roe v. Jefferson, 875 S.W.2d 653, 657 (Tenn. 1994). "It is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a right of action." John Kohl & Co., P.C., 977 S.W. 2d at 532-33; Roe, 875 S.W.2d at 657. Thus, it is not required that the plaintiff seek professional advice to be put upon notice of a malpractice claim. Smith, 919 S.W.2d at 597. It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." Shadrick v. Coker, 963 S.W.2d 726, 733 (Tenn. 1998). If the court were to allow suit to be filed

---

[3] Judge Rodriquez's decision focuses on the November 2, 2006 award of sanctions in discussing the accrual of the cause of action against Braverman. (See Ex. R, August 12, 2008 Opinion and Order at 17-18.) That sanctions award was vacated and withdrawn by Judge Young in January 2007 and thus cannot give rise to any liability for professional negligence. Accordingly, the operative date as it applies to these Defendants can be no later than September 27, 2005.

K HPO 228328 v1
2914265-000001 6/29/2009

"once all the injurious effects and consequences are known, [it] would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims." John Kohl & Co., P.C., 977 S.W.2d at 533.

Further construing the knowledge component, the Tennessee courts have held that a plaintiff seeking to bring a malpractice action is said to have imputed knowledge of when the cause of action accrued from his attorney. Smith, 919 S.W.2d at 597. The Tennessee Appellate Court has held that "a client is implied to have notice of facts transmitted to his attorney in the matter and course of his employment for such client." Id. quoting Roberts v. State, 546 S.W.2d 264, 265 (Tenn. Crim. App. 1976). The purpose of the rule stems from the attorney's duty to communicate with his client.

> [A] person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial. So, the facts constituting knowledge, or want of it, on the part of an attorney, are proper subjects of proof, and are to be ascertained by testimony as in other cases; but when ascertained, the constructive notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired.

Smith, 919 S.W.2d at 597-98. If the attorney does not communicate the potential cause of action to the client, and the client is later time barred from bringing the claim, then the client's only viable action is against his attorney for the harm. See Smith, 919 S.W.2d at 598.

At the very latest, Plaintiffs had constructive (if not actual) notice of the injury on September 27, 2005 when the Court imposed sizeable attorney's fees and costs on them. In fact, some of Plaintiffs' counsel at the time, Kizer & Black and Wolf Block, filed a motion to alter or amend that Order on that same day[4]. Moreover, whether or not Plaintiffs had actually been told

---

[4] Presumably, counsel could not have filed this pleading without the prior knowledge and consent of their clients.

15

K HPO 228328 v1
2914265-000001 6/29/2009
Case 3:09-cv-00169   Document 13   Filed 06/29/09   Page 15 of 20   PageID #: 68

of the Order on that date, Plaintiffs' knowledge of when this injury occurred is imputed from their counsel. Defendants withdrew as counsel on March 15, 2005, however, Braverman and Kizer & Black continued to represent them at the time of withdrawal and through September 27, 2005. In addition, Wolf Block represented Plaintiffs on September 27, 2005. As such, after Defendants had withdrawn as co-counsel, Plaintiffs had actual or constructive knowledge of any alleged legal malpractice through Braverman and Kizer & Black.

Because the potential cause of action accrued at the latest on September 27, 2005 when the Court issued the award of attorneys' fees and costs against Plaintiffs the latest possible date Plaintiffs could have or should have known of its injuries is September 27, 2005. As a result, Plaintiffs' claim for legal malpractice is time barred.

Clearly, absent an agreement to extend the one year statute, the statute of limitations expired more than three and a half years ago. Furthermore, the tolling agreement between Plaintiffs and Defendants Shulman and Cooper cannot save Plaintiffs' claims as it was not entered into until October 19, 2006 - more than one year after September 27, 2005. In addition, the tolling agreement expressly provided that the "[a]greement should not be deemed to revive any claim that is or was already barred on [the date of the agreement.]" Accordingly, this Court should dismiss the Complaint with prejudice against each of the Defendants.[5]

### C. Under Any Circumstances, Plaintiffs' Claims Against Cooper and Guberman are Time Barred

Assuming *arguendo* that the Court finds Plaintiffs did not suffer a legally cognizable injury or they did not have knowledge of that injury by September 27, 2005, Plaintiffs are unable to circumvent the statute of limitations by relying upon the tolling agreements for claims against Defendants Cooper and Guberman. As discussed above, a one-year statute of limitations applies

K HPO 228328 v1
2914265-000001 6/29/2009

to Plaintiffs' legal malpractice claims against Cooper and Guberman. Even if Plaintiffs were to argue that those claims in January 29, 2007, when the Circuit Court amended the November 2, 2006 Order for sanctions - -the last date of sanctions in the Underlying Litigation, (See Ex. N, January 29, 2007 Order; Ex. A, Rule Docket.), an untenable and indefensible legal position, the statute of limitations would have run regarding Cooper and Guberman.

The tolling agreement cannot save Plaintiffs' claims against Cooper and Guberman. Guberman never entered into any tolling agreement with Plaintiffs. The tolling agreement between Plaintiffs and Cooper, who was no longer with Shulman, lasted from October 19, 2006 until October 19, 2007. Therefore, even if the statute of limitations did not begin to run until January 27, 2007 for Guberman or October 20, 2007 for Cooper, this action would be untimely. By filing the instant complaint on April 20, 2009, more than one year after October 19, 2007, Plaintiffs are time barred from bringing legal malpractice claims against Cooper or Guberman and this Court should dismiss the Complaint against Cooper with prejudice.

## II. PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO PLEAD DIVERSITY OF JURISDICTION PROPERLY, AND THUS, THIS COURT LACKS SUBJECT MATTER JURISDICTION.

Under the diversity statute, 28 U.S.C. § 1332(a), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. See C.T. Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990). The parties must possess complete diversity of citizenship to invoke a court's jurisdiction under the statute. Estep & Assocs., Inc. v. Leonard Hill & Sons, 543 F.Supp. 124, 126 (E.D. Tenn. 1982). To demonstrate complete diversity, "citizenship should be distinctly and affirmatively alleged."

---

[5] Guberman never entered any tolling agreement and there would not appear to be even a colorable basis for his joinder herein.

K HPO 228328 v1
2914265-000001 6/29/2009

Id. Mere "[a]llegation of a party's residence is not a sufficient allegation of his citizenship." Smith v. Dealers Transit, Inc., 239 F.Supp. 605, 607 n.2 (E.D. Tenn. 1965).

Special consideration must be given when determining the citizenship of a partnership. "In an extended line of cases, the Supreme Court has consistently held that, where non-corporate entities -- including partnerships -- are concerned, the courts should look to the citizenship of each of the persons comprising such organizations in order to determine whether there is compliance with the diversity standard." Estep, 543 F.Supp. at 125. Simply put, a partnership does not have its own citizenship. Instead, partnerships are "a citizen of each state in which it has a member." Id. The Supreme Court has held that this rule requires the court to "consult the citizenship of [no] less than all of the entity's members." Arkoma, 494 U.S. at 195.

In this case, Plaintiffs' complaint fails to properly allege the citizenship of the individual plaintiffs or of the partnership plaintiffs. The complaint merely states that the individual Plaintiffs are United States citizens and residents of New Jersey. (See Compl. ¶¶ 2-3.) Further, Plaintiffs fail to allege the citizenship of each of the partners of New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171. (Id. ¶¶ 4-6.)

Additionally, Plaintiffs failed to plead properly the diverse citizenship of Defendants Ross Cooper and Mark Guberman. Plaintiffs' complaint states that "Defendant Ross D. Cooper, Esquire, is a resident of Maryland" and "Defendant Mark S. Guberman is a resident of Maryland." (Id. ¶¶ 8-9.) But, as described above, it is the Defendants' citizenship, not residence, that is determinative of diversity for purposes of jurisdiction. See Smith, 239 F.Supp. at 607 n.2. Defendants' residence is immaterial.

Accordingly, Plaintiffs' complaint must be dismissed for failure to allege properly diversity of citizenship.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be granted and Plaintiffs' complaint should be dismissed with prejudice.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.


By: s/Harry P. Ogden
Harry P. Ogden (BPR# 004498)
265 Brookview Centre Way, Ste 600
Knoxville, Tennessee 27919

Attorney for Defendants, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Ross D. Cooper, and Mark S. Guberman

AND

ARCHER & GREINER,
A Professional Corporation
Frank D. Allen (pro hac vice pending)
Michael P. Hackett (pro hac vice pending)
One Centennial Square
Haddonfield, New Jersey 08033

Attorneys for Defendants, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Ross D. Cooper, and Mark S. Guberman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. Mail. Parties may accept this filing through the Court's electronic filing system.

Bryan L. Capps, Esq.
GILREATH & ASSOCIATES
550 Main Ave., Suite 600
Knoxville, TN 37902

Chris Sherman, Esq.
JACOBS & BARBONE
1125 Pacific Avenue
Atlantic City, NJ 08401

s/Harry P. Ogden
Harry P. Ogden (BPR# 004498)