IN THE CIRCUIT COURT FOR BLOUNT COUNTY, TENNESSEE
AT MARYVILLE

NEW MIDLAND PLAZA ASSOCIATES, )
A Tennessee General Partnership, )
MARTIN E. O'BOYLE, CATHERINE )
O'BOYLE SUCCESSOR TO JOHN E. )
O'BOYLE and CATHERINE O'BOYLE )
as tenants by the entireties, COMMERCE )
PARTNERSHIP NO. 1147, a Florida )
General Partnership and COMMERCE )
PARTNERSHIP NO. 1171, a Florida )
General Partnership, )
)
        Plaintiffs, )
) CIVIL ACTION NO. E-18053
v. )
)
FIRST UNION NATIONAL BANK, )
ALCOA CALDERWOOD, LLC. (F/K/A )
COOLIDGE SOMERSET ALCOA, LLC.), )
DAVID FRAIMOW, MARSHALL )
ALLAN and FRED STAHL, )
)
        Defendants. )

## ORDER

This case came on for further hearing on October 18, 2004 before the Honorable W. Dale Young, Judge and all matters before the Court were taken under advisement until November 13, 2004.

1.     The following reports by the Special Master are pending:

**Reports Regarding Additional Evidence:**

| | |
|---|---|
| November 20, 2003 | Reports regarding new O'Boyle Affidavit |
| December 9, 2003 | Report regarding Mazo deposition |

**Reports Regarding Damages:**

| | |
|---|---|
| May 20, 2003 | Report on Damages |
| September 3, 2003 | Supplemental Report on Damages |

ENTERED 12-15-04



**Reports Regarding Other Issues:**

| | |
|---|---|
| July 29, 2003 | Report Regarding Ownership of Note |
| August 7, 2003 | Report Regarding Delay in Hancock Fabrics Lease |
| September 10, 2003 | Report Regarding Coolidge Defendants' Conduct in Bankruptcy Case |
| October 22, 2003 | Report on Motion to Dismiss and Summary Judgment |

These Reports, together with objections thereto, motions to approve and confirm them, and related motions were heard at hearings on March 8 and 17-19, 2004.

At the close of argument of October 18, 2004 and later confirmed in the Court's Order entered October 19, 2004, the parties were invited to submit questions to the Court for consideration in making its rulings as to all matters under advisement. The last of those questions were to have been submitted by the close of the business day on November 12, 2004.

The Court has received and reviewed the requested data in connection with making its rulings set forth herein.

Subsequent to Defendants' letter to the Court dated November 3, 2004, Plaintiff filed a Motion to Strike the letter of Mr. Lucas to the Court from the record which Motion was filed on November 8, 2004.

The Court most respectfully overrules said Motion.

2. **The Hearing on the Special Master's Report**

a. On March 17-19, 2004, the Court held a hearing at which time the Court considered *de novo* the law, facts and evidence in connection with the Special Master's Reports, the objections thereto and the motions to approve them. Over the course of

three days, counsel presented extensive arguments. Counsel's presentations included, and the Court considered, the Reports themselves, as well as deposition testimony (including video-taped portions of depositions), exhibits, detailed references to the record, and argument.

    b.    As noted previously, the Court considered the Reports *de novo* on the law and record that had been properly presented to the Special Master, and upon the objections and briefs filed by the parties. The Court, however, did not consider evidence that had not been submitted to the Special Master or submitted to the Court **after** the Special Master issued his Reports. See Report dated November 20, 2003.

    c.    In addition to the extensive presentations by counsel, the Court notes that the Reports by the Special Master are quite detailed, thorough, and comprehensively analyze and report on the issues requested by the Court. The Court rejects Plaintiffs' contention that the Special Master was biased and that his work does not represent a "reasoned analysis," and that it is "replete with fundamentally flawed reasoning." See November 20, 2003 Report at 5. As the Court has previously observed, the Special Master's work in this case is perhaps the most detailed and thorough that the Court has ever seen in a Special Master's report, and the Court commends the Special Master for his diligent work.[1]

---

[1] The Special Master was Robert P. Murrian. Mr. Murrian is a highly respected retired U.S. Magistrate Judge who served for the Eastern District of Tennessee during the period 1978-2002. The Court has great confidence in Judge Murrian's integrity, skill and ability. His service to the Court is of great value.

### 3. The Reports Regarding Additional Evidence

a. The Court has carefully considered the Plaintiffs' efforts to offer additional evidence and to take additional discovery to oppose the summary judgment motions reported upon by the Special Master, and of the Special Master's Reports of November 20, 2004 (regarding the new O'Boyle Affidavit) and December 9, 2004 (regarding the deposition of Daniel Mazo). On June 8, 2004, the Court issued its Memorandum, which was confirmed by Order entered on June 28, 2004. That Memorandum and Order addressed the issue of whether, in ruling upon the Special Master's Reports on various summary judgment motions, the Court would consider additional evidence that had not been properly submitted to the Special Master. The Court ruled that in considering the motions upon which the Special Master reported, it would conduct a *de novo* review of the record that was properly before the Special Master in connection with those motions, but would not consider additional evidence that had been presented to the Special Master and/or the Court after the Special Master had rendered his Reports.

b. These prior rulings by the Court decided the issues presented by the Special Master's Reports of November 20, 2004 and December 9, 2004. For the reasons previously stated and for the reasons stated by the Special Master in those Reports, those Reports are therefore AFFIRMED and ADOPTED by the Court.

c. The Court has considered the factors specified by the Tennessee Supreme Court in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000). In connection therewith the Court finds as follows:

(1) **The Plaintiffs' efforts to obtain evidence to respond to the motions for summary judgment** -- The Plaintiffs' newly submitted evidence consists of Mr. O'Boyle's testimony via affidavit. Mr. O'Boyle is a Plaintiff and his testimony has at all times been within the Plaintiffs' control. This factor therefore weighs against the Plaintiffs.

(2) **The importance of the newly submitted evidence** -- This factor weighs in favor of the Defendants. In his newly submitted affidavit, Mr. O'Boyle contradicts his prior sworn deposition testimony. See November 20 Report at 3-4, 6-7. Where a party submits contradictory evidence under oath, the Court should disregard the contradictory evidence. Tibbals Flooring Co. v. Stanfill, 410 S.W.2d 892, 896 (Tenn. 1967); Ayers v. Rutherford Hosp., Inc., 689 S.W.2d 155, 162 (Tenn. Ct. App. 1984) (affidavit and deposition that "are contradictory . . . cancel each other out and force us to disregard them as a matter of law."); *Gambill v. Middle Tennessee Medical Center*, 751 S.W.2d 145 (Tenn. Ct. App. 1988). Because Mr. O'Boyle may not contradict his prior testimony to rebut a summary judgment motion, it cannot be of importance to his case.

(3) **The explanation offered by the Plaintiffs for their failure to offer the newly submitted evidence in their initial response to the motion for summary judgment** -- The Plaintiffs have made no showing of due diligence and have offered no valid explanation as to why the newly submitted evidence could not have been submitted earlier. At the November 18, 2003 hearing on this matter, one of Plaintiffs' counsel, Mr. Cooper, represented that they did not offer Mr. O'Boyle's new affidavit and testimony because "we didn't think it was important . . . " Transcript of November 18, 2003 hearing at 95. Only shortly later in that same argument Mr. Cooper denied making that statement, but reaffirmed "that when we looked at the overall record, the testimony from Mr. O'Boyle, we believe that it adequately reflected the facts as we argued them before you the first time around and did not believe he needed supplementation." Id. at 100. It is not a sufficient explanation for the Plaintiffs simply to say that they did not think this testimony was important or that it did not need to be supplemented. A party opposing a motion for summary judgment may not defend against it piecemeal by first offering only a small portion of its available proof to see if that is enough to defeat the motion, and then add a little more of its available proof piecemeal until it finally is successful. Plaintiffs' explanation is inadequate and does not demonstrate due diligence by Plaintiffs.

(4) **The likelihood that the Plaintiffs will suffer *unfair* prejudice -- It is not likely that the Plaintiffs will suffer unfair prejudice.** The Court is not excluding evidence that is properly admissible, because for the reasons noted in sub-paragraph (2), Mr. O'Boyle cannot contradict his own testimony. In addition, if there were any prejudice suffered by the Plaintiffs, it would not be "unfair" because it would be prejudice of the Plaintiffs own making. As the Special Master found, "we have got to have some rules and we have got to follow the rules, or there will be chaos." November 20 Report at 9.

Moreover, at a hearing on November 13, 2003, Plaintiffs' counsel stated that the Affidavit was merely an effort to restate and collect in one document facts that were already before the Special Master in order to "clarify the overall picture." See Transcript of November 13, 2003, hearing at 18.[2] That is consistent with Mr. Cooper's representation discussed above that they "didn't think that it was important" to raise the additional facts before the hearing on the motion for summary judgment. It is inconsistent for Plaintiffs to claim that the facts alleged in the new affidavit merely serve to "clarify the overall picture" and then claim that their exclusion causes "unfair prejudice."

(5) **Other relevant factors** -- As the Special Master found, Mr. O'Boyle's affidavit "is simply response to the Special Master's Report of October 22, 2003 in an effort to create a genuine issue of fact where there was none before." He was repeatedly asked about conversations between him and Mr. Fraimow in the summer of 1998, and this additional testimony should have come out in response to those questions. These factors weigh against the Plaintiffs.

4. **The October 22, 2003 Report**

On October 22, 2003, the Special Master issued his report on Defendants' motions to dismiss and for summary judgment. The Court ADOPTS and AFFIRMS that report in its entirety for the reasons stated therein, and for the following reasons:

   a. It is undisputed that New Midland defaulted in the payment of its loan.[3]

   b. Even under New Midland's factual contentions, the alleged loan extensions that it contends were wrongful did not occur until after the September 30, 1998 default.[4]

---

[2] "MR. BLACK: I do, Your Honor, for this reason, of course, Your Honor hears all of these matters *de novo*, and one of the main problems in this case -- and I compliment counsel for their strategic decisions -- is we've had a little issue over here on summary judgment, we've had a little issue over here, they've been very limited and we haven't had the overall picture. And that's what I think this does, is clarify the overall picture."

[3] Patten Dep. at 120; Schwartz Dep. at 72, 117; Report at 12.

[4] Patten Dep. at 118; October 22 Report at 12.

c. The Plaintiffs claim that First Union induced New Midland's tenants to breach their leases when it attempted to foreclose its collateral by sending them letters notifying them to make their rent payments to it, rather than to New Midland. There is, however, no allegation by New Midland that these tenant notification letters caused the tenants to breach their contracts by not paying their rent. Even Plaintiffs' own experts admitted that the Bank had a right to send these tenant notification letters and to exercise its creditor's rights remedies against its collateral.[5]

d. Plaintiffs' fraud claim must be dismissed because the record, viewed most favorably to Plaintiffs, does not reveal that First Union or Mr. Fraimow ever made a false representation to Plaintiffs that they relied upon.[6]

e. Plaintiffs' civil conspiracy claim must be dismissed because the "primary purpose" of a civil conspiracy must be to cause injury to another; incidental injuries resulting from a pursuit of the parties' own fair interest are not actionable.[7]

f. In opposing summary judgment, the Plaintiffs claimed that the object of the conspiracy was to accomplish a lawful purpose by unlawful means. Plaintiffs abandoned any claim that the object of the conspiracy was to accomplish an unlawful purpose. October 22 Report at 31-32.

---

[5] Patten Dep. at 123-24, 132-33; Swartz Dep. at 117-18, 130.

[6] See Report at 14-15, 21-22.

[7] Lipman v. First National Bank, 1999 Tenn. App. LEXIS 87 (Tenn. Ct. App., Feb. 5, 1999); Report at 23.

g. Plaintiffs apparently claim that the object of the conspiracy was to "steal" the New Midland center (even though this was inconsistent with their representation that the purpose of the conspiracy was only to accomplish a lawful purpose by unlawful means). However, that allegation is speculative and unsupported in the record.[8] As in Lipman, the Plaintiffs have not presented specific admissible facts that realistically challenge the business decisions made by the Bank and the Coolidge Defendants.[9]

h. Acts by First Union prior to Coolidge's involvement cannot be in furtherance of a conspiracy because a conspiracy requires two separate conspirators.

i. First Union and its employee, Mr. Fraimow could not conspire, because they are considered to be the same legal entity for purposes of conspiracy law. As a matter of law, they are incapable of conspiring with each other.[10]

j. Coolidge is not liable for acts by First Union and Fraimow prior to Coolidge's involvement because a conspiracy could not have existed then. The cases cited by Plaintiff are for Defendants who join ongoing conspiracies.[11]

k. The other alleged "illegal acts" relied upon by Plaintiffs in support of their conspiracy claim do not create a genuine issue of material fact for the reasons discussed at pp. 22-35 of the October 22 Report. Specifically:

---

[8] See Report at 25.

[9] The Defendant Alcoa Calderwood, LLC, was formerly known as Coolidge Somerset Alcoa, LLC. It and the individual Defendants, Messrs. Allen and Stahl, will collectively be referred to as "Coolidge" or "Coolidge Defendants."

[10] Copperweld Corp. v. Independence Tube Co., 467 U.S. 752 (1984); Tran-Med of America, Inc. v. Allstate Ins., 71 S.W.3d 691 (Tenn. 2002).

[11] Havoco of America, Ltd. v. Shell Oil Co., 626 F.2d 549 (7th Cir. 1980); Report at 27.

1. Defendants Allan and Stahl's visit to the Midland Center could not have been part of a conspiracy because the agreement between the Bank and Coolidge prohibited them from visiting the New Midland Center to contact tenants. October 22 Report at 30.

2. Plaintiffs are barred by the doctrine of *res judicata* from re-litigating the lawfulness of any of the acts alleged to have taken place in the bankruptcy litigation. October 22 Report at 30-31.

3. Plaintiffs have presented no evidence of any disclosure of Martin O'Boyle's personal financial information and even if they had, such disclosure would have been proper and lawful. October 22 Report at 41-44. See paragraph 4s, below.

l. The Court believes that the Special Master's analysis in Part C of the October 22 Report (Breach of Contract) is sound, and **AFFIRMS** and **ADOPTS** it in its entirety.

m. Plaintiffs' contention that First Union is estopped to rely on the September 30, 1998 nonpayment of the loan as an event of default is not supported by the factual record. There is no genuine issue of material fact with respect to the estoppel issue. Contrary to Plaintiffs' arguments, Tennessee law requires reliance as an element of equitable estoppel.[12] There is no genuine issue of material fact in this case regarding Plaintiffs' reliance upon any false statements by Mr. Fraimow. The Bank's alleged representations to third parties about the alleged extension of the loan, which were not communicated to Mr. O'Boyle or the other Plaintiffs, cannot form the basis of an estoppel.

n. There is no genuine issue of material fact with respect to Plaintiffs' breach of fiduciary duty claim. The Fourth Loan Modification Agreement expressly precludes New Midland from asserting its status as a joint venturer with First Union. That

---

[12] See 11 Tennessee Jurisprudence, Estoppel (1995).

provision represents a mutual manifestation of the parties' intent that their relationship does not constitute a joint venture. This is a question of law and the Court **AFFIRMS** that Special Master's Report in this regard.

o. In addition, the alleged facts regarding the Bank's "control" of the New Midland project were insufficient to create a joint venture. Rather, the facts alleged by the Plaintiffs[13] are normal incidents of a commercial loan.

p. There is no genuine issue of material fact in the record to support Plaintiffs' claims for statutory inducement to breach contract or tortious interference with business relationships.

q. Plaintiffs objected to the Special Master's recommendations for summary judgment on the tortious interference and conversion claims (Counts V, VI and VII) on the grounds that First Union supposedly had not moved for summary judgment as to those claims. However, Defendants' motion for summary judgment shows on its face that they moved for summary judgment on "all claims asserted by Plaintiffs in this lawsuit."

r. Plaintiffs also contend that First Union and Coolidge converted rents and other payments collected from tenants. However, this claim also fails because in attempting to exercise its remedies against its collateral First Union did not breach its contract. Even Plaintiffs' own experts admitted that First Union was entitled to exercise these creditor's rights remedies.[14]

---

[13] See Plaintiffs' Objections to October 22 Report at p. 30.

[14] See paragraph 4c above.

s.  Mr. O'Boyle attempts to make a personal claim that First Union breached a contract implied under Florida law by providing Coolidge with access to his financial information without his consent. Even assuming that Florida law applies, the undisputed facts in the record show that Coolidge did not see information pertaining to Mr. O'Boyle's personal finances.[15] Mr. O'Boyle's implied contract claim also fails because Mr. O'Boyle has not pleaded or come forward with any evidence that the Defendants were unjustly enriched by any alleged disclosure of his personal financial information.[16] Even if there had been such a disclosure, it would have been permissible because it would have been in First Union's interest to disclose the information in connection with Alcoa Calderwood's due diligence pursuant to its purchase of the New Midland note.[17]

**5.  The Reports on Damages.**

a.  After much delay and even an award of sanctions, Plaintiffs served their disclosure of damages and damages calculations on March 26, 2003. The Special Master reported on the issue of damages in his Report of May 20, 2003, and his Supplemental Report, prepared at the Court's request on August 3, 2003. Except as modified herein, those Reports are AFFIRMED AND ADOPTED in their entirety.

b.  Plaintiffs claim the following damages:

- So-called "lost equity consisting primarily of attorneys' fees and litigation-related expenses incurred by at least eight law firms on behalf of Plaintiffs.

---

[15] Dep. of Alcoa Calderwood by Marshall Allen at 223-26, 232-33; Dep. of Alcoa Calderwood by Fred Stall at 200.

[16] Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., 695 So.2d 393 (Fla. App. 1997).

[17] Barnett Bank v. Hooper, 498 So.2d 923 (Fla. 1986).

- Lost opportunity - This is essentially a claim for loss of use of the "lost equity."

- Lost income from an alleged delay in negotiating a lease with Hancock Fabrics.

- A portion of the salary of Mr. Darren Caterino.

- Unidentified expenses allegedly incurred by Mr. O'Boyle personally.

- Mr. O'Boyle's alleged "lost opportunity cost."

None of these items are properly recoverable as damages in this case.

c. First, all Plaintiffs' damages claims must be dismissed because, as set forth elsewhere in this Order, all of Plaintiffs' substantive claims must be dismissed.

d. Plaintiffs' claims for attorneys' fees and litigation-related expenses are barred by the American Rule.[18] None of the exceptions to the American Rule argued by the Plaintiffs are applicable in this case.

e. There is no "corollary litigation" exception to the American Rule recognized in Tennessee jurisprudence.[19]

f. The "libel of title" exception to the American Rule is not applicable because First Union's notice of foreclosure did not make a false statement about New Midland's title to the property.

g. These expenses are also not recoverable under the "third party tort" exception to the American Rule. The Plaintiffs have specifically alleged that Mr. Fraimow was acting within the scope of his employment for the Bank. The Court agrees

---

[18] State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186 (Tenn. 2000).

[19] See Report at 14-18.

with the Special Master's legal analysis that for purposes of the American Rule, the Bank and its employee, Mr. Fraimow, were the same person.

    h.    Contrary to Plaintiffs' argument, there is no general exception under Tennessee Law for recovery of attorneys' fees in conspiracy cases.

    i.    Recovery of the attorneys' fees are also barred by the Doctrine of Judicial Estoppel and the Court's inherent power to supervise improper conduct.

The Court presumes that every witness tells the truth. There may be discrepancies or differences within a witness's testimony or between the testimony of different witnesses. This does not necessarily mean that a witness is being dishonest. Sometimes a witness may have an innocent lapse of memory. Sometimes when two people observe or hear an event they often will give it a different interpretation. Witnesses may testify honestly, but simply may be wrong about what they saw, heard or remembered.

Mr. O'Boyle previously testified that Mr. Braverman would be handling this case on a "contingency basis."[20] His counsel, Mr. Braverman, was present during his testimony and did not correct it. That testimony is inconsistent with New Midland's present effort to recover attorneys' fees charged at hourly rates. Even if it were accurate and honest at the time the testimony was given, Mr. O'Boyle cannot testify to one thing in one court in order to persuade that court to rely upon his testimony and then change his position in this court.[21] Mr. Braverman gave contrary testimony about this issue. When he was deposed he was specifically asked whether Mr. O'Boyle had testified that to the

---

[20] See Transcript of Bankruptcy Court hearing, January 2000, at p. 99, attached as Exhibit D to the Bank's *Response to Plaintiff's Objection to Special Master's Report on Damages*.

[21] Marcus v. Marcus, 993 S.W.2d 596 (Tenn. 1999).

bankruptcy court he would be handling this case for a contingent fee. Mr. Braverman denied that Mr. O'Boyle had given that testimony. See Braverman Deposition at pp. 86-87. Mr. Braverman's testimony was incorrect,[22] and has never been corrected by either him or Mr. O'Boyle. Mr. Braverman's actions are attributable to his clients. Pioneer Investment Services Co. v. Brunswick Associates Ltd Partnership, 504 U.S. 984 (1992).

The Court does not characterize the stated inconsistencies in testimony to be "lies"; the Court does not undertake to assign a motive or divine an intent for the stated inconsistencies and contradictions.

Notwithstanding any honest frustration, the uncorrected inconsistencies and contradictions bar the recovery of attorney's fees, all as set-forth hereinabove.

    j.    New Midland's "lost opportunity" or loss of use claim also fails because it is premised upon the success of the "lost equity" claim. In addition, the "lost opportunity" claim is too speculative for the reasons stated by the Master at pp. 27-28 of his May 20 Report.

    k.    Mr. O'Boyle claimed $28,820.79 in unidentified expenses. These damages were never identified until they were included in a letter from Mr. O'Boyle's counsel on March 26, 2003. They were not timely identified as required by the Court's previous Order of March 17, 2003, affirming the Special Master's Report of February 24, 2003, at p. 19.

    l.    The "lost opportunity" claim by Mr. O'Boyle individually also fails. This is a claim for speculative and unspecified lost profits for unidentified other projects that Mr. O'Boyle claims he would have developed had he not been spending his time on this

---

[22] See Transcript of August 21, 2003 hearing at p. 41.

litigation. This category of damages, however, has no logical nexus, and could not be proximately caused by the breach of implied contract alleged by Mr. O'Boyle in Count VIII of the Third Amended Complaint. In addition, as the Special Master correctly noted, this claim is based upon data that was not disclosed or documented, and which Mr. O'Boyle refused to disclose. His counsel previously represented that information regarding Mr. O'Boyle's other projects "will not lead to the discovery of a scintilla of evidence that could be admitted in this case."[23] Plaintiffs therefore are estopped from now changing their position to pursue this speculative claim based upon evidence that they previously contended was inadmissible.

    m.    Mr. O'Boyle's "lost opportunity" claim is also too speculative to be recoverable. Mr. O'Boyle seeks to recover for unidentified projects that never existed and were never even planned. Those projects have no proposed location, no proposed budget, no proposed structure, no planned financing. Tennessee law does not permit recovery for such speculative claims.[24]

    n.    In his September 3, 2003 Supplemental Report on damages, the Special Master recommended that attorneys' fees associated with the bankruptcy proceedings New Midland filed as a result of the alleged attempted foreclosure, might be recoverable. The Special Master held that the case of *Culbreath v. First Tennessee Bank National Association*, 44 S.W.3d 518 (Tenn. 2001), "appears to stand for the proposition that attorney's fees incurred in defending against a wrongful foreclosure may be recovered in

---

[23] Transcript of Proceedings, September 27, 2003 at 53.

[24] Overstreet v. Shoney's, Inc., 4 S.W.3d 694 (Tenn. App. 1999); Morristown Lincoln-Mercury v. Roy N. Lotspeich Pub. Co., 298 S.W.2d 788 (Tenn. App. 1956).

a separate action brought by the mortgagor." Respectfully, the Court disagrees with this recommendation by the Special Master. In *Culbreath* the issue of the recoverability of attorney's fees was not presented to the Tennessee Supreme Court on appeal. That issue therefore was not decided by the Tennessee Supreme Court. The same is true of the related appeal to the Tennessee Court of Appeals. For these reasons, the Court declines to affirm or adopt Part II (pp. 10-16) of the Supplemental Special Master's Report of September 3, 2003.

6.     **The Remaining Reports**

**The Ownership of the Note**

   a.     Apparently the original note made by New Midland that was the subject of this suit has been lost. For a number of years New Midland made installment payments to the Bank (and its predecessors). However, in this litigation, because of their inability to produce the original note, the Plaintiffs contested Defendants' ownership of the note.

   b.     Coolidge submitted a motion for summary judgment, together with a supporting affidavit and exhibits that established a *prima facie* case of its ownership of the note via a series of mergers and assignments.[25] This established a *prima facie* case that Coolidge is the current holder of the note.[26]

---

[25] See Affidavit of Daniel P. Mazo, dated January 7, 2000, attached to Coolidge's Statement of Undisputed Material Facts as Exhibit D; May 6, 1998 letter from the Comptroller of the Currency attached as Exhibit H to Coolidge's Statement of Undisputed Material Facts; 12 U.S.C. § 215(e).

[26] As the Master noted, as a practical matter no other claimant has ever come forward attempting to collect the note.

c. After extensive discovery on this issue, New Midland was unable to produce any evidence that the note did not follow the chain of ownership set forth by Coolidge. The Special Master's Report of July 29, 2003, therefore is AFFIRMED AND ADOPTED in its entirety.

**The Hancock Fabrics Lease**

d. Although the Plaintiffs did not attempt to state it as a separate count in their Third Amended Complaint, in their damages calculations they contended that the Defendants were liable for up to $85,500 based upon an alleged delay in Hancock Fabrics' signing a new lease for a larger space. The Defendants submitted a comprehensive and properly supported motion for summary judgment with respect to this issue, which shows that the delay in the negotiation of this lease was not caused by the Defendants. The undisputed record shows that many terms of the New Midland-Hancock Fabrics lease were in continued negotiation throughout the claimed period of delay, and that when there finally was an executed lease by Hancock in January 2001, there was no unreasonable delay by Coolidge in executing the requested nondisturbance agreement. For these reasons the Plaintiffs have failed to show that there is a genuine issue of material facts with respect to the alleged delay of the Hancock Fabrics' lease that was caused by the Defendants, and the Court therefore AFFIRMS AND ADOPTS the Special Master's Report of August 7, 2003 in entirety.

e. In addition, the Court agrees with the Special Master that the Plaintiffs did not properly respond to the motion for summary judgment relating to the Hancock Fabrics delay claim, and that the Defendants are further entitled to summary judgment on

the Hancock Fabrics' lease delay claim for the reasons stated in Part III of the Special Master's Report dated August 7, 2003.[27]

**Coolidge's Actions in New Midland's Bankruptcy Case.**

f. New Midland also contends that various actions taken by Coolidge in New Midland's bankruptcy case in Florida were improper. This is not a separate claim for relief, but was raised by New Midland in connection with its conspiracy claim and its argument that Coolidge committed "unlawful acts." New Midland claims that the Coolidge Defendants' "unlawful acts" were that they refused to produce evidence in the bankruptcy case, that they were sanctioned by the bankruptcy court, that they refused to attend depositions, that they circulated and filed a competing plan of reorganization during the period when New Midland had the exclusive right to circulate such a plan, and that they entered into an agreement with the City of Alcoa, and that they objected to New Midland's proposed Chapter 11 Plan. The Court agrees that these are issues that could have been litigated in New Midland's Chapter 11 bankruptcy proceeding and that, under the doctrine of *res judicata*, may not be relitigated here as to their unlawfulness. For these reasons, the Special Master's Report of September 10, 2003 is AFFIRMED AND ADOPTED in its entirety.

---

[27] See Rule 56.03, Tenn. R. Civ. Proc.; *First Citizen's Bank of Cleveland v. Cross*, 55 S.W.3d 564 (Tenn. App. 2001); *Wilson v. CSX Transportation, Inc.*, 2003 WL 1233536, Tenn. App. LEXIS 221 (March 18, 2003).

This 15th day of December, 2004.

IT IS SO ORDERED.

_____
W. Dale Young, Circuit Judge

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true, correct and exact copy of the foregoing Order has been served upon all Counsel or parties listed below by placing a copy in the United States Mail, postage pre-paid, addressed to said Counsel or parties at the addresses shown herein below:

Honorable Robert Murrian
Special Master
Kramer, Rayson, Leake, Rodgers & Morgan
First Tennessee Plaza, Suite 2500
800 South Gay Street
Knoxville, Tennessee 37929

David Black
Attorney at Law
Kizer & Black
329 Cates Street
Maryville, Tennessee 37801-4903

Jerry Cunningham
Attorney at Law
Kizer & Black
329 Cates Street
Maryville, Tennessee 37801-4903

David L. Braverman
Attorney at Law
Braverman, Kaskey & Caprara
One Liberty Place, 21st Floor
Philadelphia, Pennsylvania 19103-7334

I, James Carroll Clerk and Master of the CIRCUIT COURT at Maryville, TN hereby certify that the within is a true copy of the Order entered in case No. E-18053 on the 15th day of Dec., 2004. Entered Min. Book 132 Page 618 by CMugis

Mark S. Guberman
Attorney at Law
Shulman, Rogers, Gandal, Pordy & Ecker
11921 Rockville Pike, Third Floor
Rockville, Maryland 20852-2743

John A. Lucas
James S. Chase
Attorneys at Law
Hunton & Williams
900 South Gay Street, Suite 2000
Knoxville, Tennessee 37902

Thomas S. Scott, Jr.
Attorney at Law
Ball & Scott
550 West Main Avenue, Suite 750
Knoxville, Tennessee 37902

Charles W. Van Beke
Attorney at Law
Wagner, Myers & Sanger
800 South Gay Street, Suite 1801
Knoxville, Tennessee 37902

Melinda Meador
Attorney at Law
Bass, Berry & Sims
1700 Riverview Tower
900 South Gay Street
Knoxville, Tennessee 37902


This _10th_ day of _December_, 2004.

James A. Carroll, Clerk & Master

by: _____
Deputy Clerk