# IN THE CIRCUIT COURT FOR BLOUNT COUNTY, TENNESSEE
## EQUITY DIVISION

*NEW MIDLAND PLAZA ASSOCIATES,*
*a Tennessee General Partnership,*
*MARTIN E. O'BOYLE, CATHERINE O'BOYLE,*
*SUCCESSOR TO JOHN E. O'BOYLE, and*
*CATHERINE O'BOYLE as tenants by the*
*entireties, COMMERCE PARTNERSHIP NO. 1147,*
*a Florida General Partnership, and COMMERCE*
*PARTNERSHIP NO. 1171, a Florida*
*General Partnership,*

  *Plaintiffs,*

*vs.*

*FIRST UNION NATIONAL BANK,*
*ALCOA CALDERWOOD, LLC*
*(F/K/A COOLIDGE SOMERSET ALCOA, LLC,*
*DAVID FRAIMOW, MARSHALL ALLEN, and*
*FRED STAHL,*

  *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Civil Action No. E-18053*

FILED
FEB 17 2005

EXHIBIT

J

## SPECIAL MASTER'S FIRST SUPPLEMENT TO REPORT

COMES J. MICHAEL WINCHESTER, as Special Master by Appointment and Order of Reference from this Honorable Court dated and filed March 14, 2003, as supplemented and revised by Order filed February 9, 2005 (collectively the "**Order of Reference**"), pursuant to Rule 53 of the Tennessee Rules of Civil Procedure (TRCP) and does hereby file and serve his First Supplement to Report ("**First Supplement**"). This Special Master has previously filed his Preliminary Report and Status of Proceedings ("**Preliminary Report**") on February 8, 2005, to which specific reference is hereby made for incorporation herein by reference.

## A. INTRODUCTION AND GENERAL MATTERS

This Special Master has previously determined the Loan Amount Due on the Maturity Date of January 20, 2005, and has reported his findings to this Honorable Court in the Preliminary Report. In the Preliminary Report, this Special Master reserved his determination

and findings on any and all issues involving the amounts of attorney's fees and legal costs to be added to the Loan Amount Due and asked for additional time to determine the Attorney's Fees Categories, if any, for which Alcoa Calderwood, LLC ("**Alcoa**") may seek additional funds alleged to be due and owing from New Midland Plaza Associates ("**New Midland**") under the New Midland Loan Documents described in the Preliminary Report. As previously stated in said Preliminary Report, the Special Master determined that at least some portions of the Attorney's Fees Claims (previously identified under Tab 4) as itemized in the Attorney's Fees Categories (originally listed under Tab 5 of the Preliminary Report) appear to be properly included in the Attorney's Fees Provisions (as provided under Tab 3 of the Preliminary Report). This First Supplement will provide the Special Master's findings, conclusions, and reports on these Attorney's Fees Issues, and will establish a procedure and schedule to determine whether such fees and costs were both reasonable and necessary.

Since this is a First Supplement to the Preliminary Report, this Special Master will make reference to and use the same definitions in said Preliminary Report and to previous itemizations (*i.e.*, Attorney's Fees Categories) provided under prior Tabs in said Preliminary Report. Any additional exhibits or attachments to this First Supplement shall begin with Tab 7, etc., since it is the intention of the Special Master to further supplement his Report after a determination is made as to whether certain fees and expenses are reasonable and necessary after discovery and additional proceedings, if required.

## B.  SUMMARY OF SUBMISSIONS AND RESPONSES

On January 11, 2005, this Special Master received Alcoa's Motion and Submission previously identified along with numerous exhibits attached thereto (Exhibits A-W, inclusive). Alcoa filed its Amended and Restated Motion and Submission on January 25, 2005, containing Exhibits 1-44, inclusive. By letter dated January 25, 2005, Alcoa further supplemented its material by providing Exhibits 16A, 17A, and 20A, and additional Exhibits 45 and 46, inclusive.

Alcoa later filed a Reply on or about February 1, 2005, containing additional Exhibits A-F, inclusive. Finally, Alcoa filed additional materials under cover letter of February 4, 2005, containing Exhibits 47-55, inclusive. All of the foregoing shall be collectively referenced as the "Alcoa Submission" unless otherwise indicated. Alcoa participated in the First Meeting and Preliminary Hearing.

New Midland participated at the First Meeting before this Special Master on January 20, 2005, along with attorneys and representatives of Alcoa and First Union. In addition to Exhibit 3 at the First Meeting, New Midland supplied Late Exhibit 5 containing loan balance information and calculations asserting its position on the Loan Amount Due previously discussed herein. New Midland then filed its Response to Alcoa's Motion and Submission on or about January 31, 2005, containing Exhibits A-K, inclusive. New Midland participated in the Preliminary Hearing on February 2, 2005, before this Special Master and submitted some additional late-filed exhibits identified in the Transcript of the Preliminary Hearing previously filed with this Honorable Court. Later, New Midland filed additional materials under cover letter of February 4, 2005, containing Exhibits L, M, and N, inclusive. All of the foregoing shall be collectively referred to as the "New Midland Response", unless otherwise indicated.

The attorneys for First Union submitted Late Exhibit 4 at the First Meeting containing a breakdown of accounts and balances to determine the Loan Amount Due. First Union participated at the First Meeting and Preliminary Hearing, but has not submitted separate Responses or additional exhibits before this Special Master. On the Attorney's Fees Issues, it is this Special Master's understanding that First Union is not seeking any recovery of its attorney's fees or legal costs **from New Midland** pursuant to the Attorney's Fees Provisions (see Preliminary Hearing Transcript at pages 89 and 298). However, First Union's legal counsel has stated that any issues involving waiver of attorney-client privileges and production of attorney's

bills would be of interest to First Union and that it is not First Union's position to waive any attorney-client privileges by production of documents.

It is the asserted position of Alcoa that it is entitled to recover all of the Attorney's Fees Claims exclusive of interest and additional fees and expenses in the amount of $2,973,637.00 (see Tab 4). These amounts are an accumulation of attorney's fees and expenses from at least eight (8) law firms that have represented Alcoa in some portion or phase of the New Midland Bankruptcy Proceedings previously identified **and** in the Bank Litigation in this Court. Alcoa is also claiming entitlement to attorney's fees incurred by First Union and various law firms that have represented First Union, as well as the attorney's fees of David Fraimow in the Bank Litigation. The fees and expenses of Jeffery Wall as an expert witness and the costs for the services of Special Master Robert P. Murrian are also sought as additional recoveries by Alcoa.

Alcoa also asserts that the language in the Attorney's Fees Provisions (see Tab 3) are "plain and unambiguous" and clearly cover all of Alcoa's attorney's fees and legal costs asserted as its Attorney's Fees Claims. As discussed in more detail below, it is Alcoa's position that all of its attorney's fees and expenses relate to "enforcement of the Note" and/or were generated after Alcoa became "a party to any suit or proceeding affecting the Mortgaged Property... the lien created by the Amended Deed of Trust..." and/or "to enforce performance of the agreements, conditions, covenants, provisions, or stipulations... of the Amended Deed of Trust or the Note". (See Attorney's Fees Provisions at Tab 3). Alcoa asserts additional grounds to support its Attorney's Fees Claims as discussed below and in the Transcript of the Preliminary Hearing.

New Midland also asserts that the Attorney's Fees Provisions are plain and unambiguous and that the Amended Note and Amended Deed of Trust (the **"Loan Documents"**) do not allow for the recovery of **any** attorney's fees by Alcoa incurred in either the Bankruptcy Proceedings or Bank Litigation. Part of New Midland's argument is based on the fact that the Amended Note

and Amended Deed of Trust contained provisions negotiated and/or approved through the Bankruptcy Proceedings which, as argued, excluded any Attorney's Fees Claims relating to the Bank Litigation and/or Bankruptcy Proceedings since such litigation and proceedings were contemplated by the terms of the Loan Documents. Further, New Midland has argued that there are facts and circumstances that may justify a waiver of the Attorney's Fees Claims by the failure of Alcoa to assert such claims from time to time during the numerous years of the continuation of the Bankruptcy Proceedings and Bank Litigation.

New Midland strongly asserts that no fees were incurred by Alcoa relating to "enforcement of the Amended Note" since New Midland has allegedly paid all installment payments pursuant to its confirmed Bankruptcy Plan on a timely and regular basis up to and through the Maturity Date of January 20, 2005. New Midland has also made general argument urging this Special Master to exclude the Attorney's Fees Claims of Alcoa because the Bank Litigation was "sanctioned" by the Bankruptcy Proceedings to allow a pursuit of lender liability claims contemplated by the Amended Trust Deed and Amended Note. New Midland has asserted additional theories and arguments discussed in some part below.

This First Supplement to the Preliminary Report is not intended as, and will not try to resolve issues involving the merits of any claims between First Union and Alcoa arising from the Loan Sale Agreement dated the _____ day of September, 1999, and delivered on November 30, 1999, by First Union (the **"Loan Sale Agreement"**). An analysis of certain sections of the Loan Sale Agreement is necessary in order to resolve certain Attorney's Fees Claims under the Attorney's Fees Categories described herein; however, it is not the intention of this Special Master to address the merits or validity of any pending claims or defenses asserted by Alcoa and/or First Union in the litigation styled *Alcoa Calderwood, LLC vs. First Union National Bank* (see Exhibit F of New Midland Response).

## C. REPORT OF FINDINGS AND CONCLUSIONS ON ATTORNEY'S FEES ISSUES

### I. FINDINGS AND CONCLUSIONS

Based on the Alcoa Submission, New Midland Response, representations and arguments of legal counsel for the participating parties, the exhibits submitted by said parties at the First Meeting and the Preliminary Hearing, and the Record submitted for review, this Special Master has made additional Findings of Fact and Conclusions of Law which are herewith reported and submitted to this Honorable Court pursuant to the Order of Reference and TRCP 53.04 as his First Supplement to his Report. The Special Master considered all exhibits presented by the various parties as being authentic and admissible, subject to a determination of relevance and/or proper weight to be given any such evidence.

In relation to the Attorney's Fees Issues, numerous citations to the New Midland Bankruptcy Proceedings were presented to this Special Master, including transcripts of hearings by the Bankruptcy Judge in the Bankruptcy Court for the Southern District of Florida, the Honorable Judge Paul G. Hyman, Jr. ("**Judge Hyman**"). Any reference to the Bankruptcy Judge or Bankruptcy Court in this portion of the Report will refer to Judge Hyman unless otherwise indicated.

As a preliminary matter involving jurisdiction, the Special Master had to review previous Orders and Opinions from Judge Hyman, including his Memorandum Opinion dated February 28, 2000, that confirmed New Midland's Second Amended Plan of Reorganization ("**Plan**"). The Plan provided for, *inter alia*, that "the Court shall retain jurisdiction as provided in the Plan" and that proposed restructured loan documents would be agreed to by the debtor [New Midland] and Alcoa or approved by further Order of the Court after notice and hearing (see Exhibit J, New Midland Response, pp. 51, 52). This Memorandum Opinion of Judge Hyman is now a reported case cited as 247 B.R. 877 (see Exhibit 5, Alcoa Submission).

This Special Master also determined from the Alcoa Submission, New Midland Response, and arguments of the parties that the interpretation and enforcement of the Attorney's Fees Provisions (Tab 3) contained in the Amended Note and Amended Deed of Trust required an examination of portions of Judge Hyman's rulings and opinions in the New Midland Bankruptcy Proceedings. This is particularly important for a determination of the Attorney's Fees Issues submitted to this Special Master since a significant amount of attorney's fees have been claimed by Alcoa that were incurred by its law firms in the New Midland Bankruptcy Proceedings. This Special Master has determined that Judge Hyman previously entered Orders and rulings pertaining to the Attorney's Fees Provisions, including the applicability of such provisions in the Bank Litigation and Amended Loan Documents. In his Interim Order on Motion to Approve Loan Documents dated November 6, 2003, Judge Hyman reflected his finding and entered his Order based on an Evidentiary Hearing in West Palm Beach, Florida, on October 10, 2003, involving the approval of new Loan Documents (see Exhibit 6, Alcoa Submission and Exhibit 19 for Amendment to Interim Order).

In paragraph 5 of the Interim Order, Judge Hyman determined that the Amended Deed of Trust should contain provisions for attorney's fees and expenses which are now set forth in paragraph 23 of the Amended and Restated Deed of Trust ultimately signed by New Midland and accepted by Alcoa (see Exhibit 8, Alcoa Submission). The Bankruptcy Judge further found that the Attorney's Fees Provisions in the Amended Deed of Trust were "commercially reasonable", but further stated that "by this ruling, the Court is in no way determining that this provision is applicable to the attorney's fees incurred in defending the Bank Litigation. This issue is for the Tennessee State Court to decide based on State law".

Based on this ruling by Judge Hyman, this Special Master finds and reports that the New Midland Bankruptcy Court has abstained from exercising jurisdiction over the Attorney's Fees Issues and has deferred to this Honorable Court to decide these issues based on relevant State

law, which this Special Master has determined to be Tennessee law (see paragraph 39, Amended Deed of Trust, Exhibit 8 of Alcoa Submission). A further review of excerpts from the hearing and proceeding before Judge Hyman on October 10, 2003, is particularly helpful in determining the applicability of the Attorney's Fees Provisions to the facts, circumstances, and arguments presented by the parties and submitted to this Special Master (see Exhibit K, Alcoa Response for Transcript of Hearing 10/10/03).

This Transcript of the October 10, 2003, hearing before Judge Hyman is also particularly helpful because both Alcoa and New Midland had presented expert testimony to Judge Hyman at said hearing relative to the Attorney's Fees Provisions under Tennessee law. Both parties' experts opined on what were "customary and commercially reasonable" terms (see direct examination of experts at Exhibits 50 and 53, Alcoa Submission). In paragraph 22 of the "direct testimony of Dennis B. Ragsdale", the expert witness for New Midland, Mr. Ragsdale opined as follows:

> "Current practice [in Tennessee] is that the lender is entitled to recover its reasonable attorney's fees and cost of collection, but there is not a corresponding right of the Borrower to recover its attorney's fees in the event that it is the prevailing party in litigation against the lender".

Mr. Ragsdale further stated in his Opinion at paragraph 24 that the circumstances involving the pending lender liability action as well as the Bankruptcy Proceedings were "unusual" and that a decision would have to be made whether the "common or customary provisions should apply without modification".

The expert for Alcoa, Jeffrey Wall, stated in paragraph 27 of his Opinion testimony to Judge Hyman that the Attorney's Fees Provisions of the new Loan Documents applied from the date of execution of the documents forward, which would be the effective date of January 20, 2000. He further stated that this was to assure there was no gap period during which there were no applicable Attorney's Fees Provisions in the revised Loan Documents.

The analysis provided by the experts for the parties was of particular interest to Judge Hyman as stated in the Transcript of the Bankruptcy Court Proceedings of October 10, 2003, referenced as Exhibit K to the New Midland Response. Beginning at page 59 of the Transcript contained in Exhibit K, the attorneys for New Midland and Alcoa discussed the applicability of the Attorney's Fees Provisions in the new Loan Documents. The attorney in these proceedings for New Midland, Francis Carter, addressed the concerns on attorney's fees to Judge Hyman beginning at page 60 of the Transcript. After acknowledging that the original Loan Documents had "broad attorney's fees provisions", Mr. Carter stated that paragraph 23 of the new Loan Documents was "virtually identical" (see Transcript, Exhibit K, page 61). Mr. Carter also stated the following:

> "What the Borrower is concerned about is, you know, we have got all of these pending claims in the State of Tennessee. The lender liability litigation has yet to come to trial, although I think it's supposed to come to trial in November..."

Mr. Carter then continued on with the following statements to Judge Hyman:

> "The Borrower's position is that the Court should do one of two things. As to pending or pre-existing disputes, the Court should either carve them out from the attorney's fees provisions, which is, you know, this one-sided provision, which is customary in Tennessee. Apparently in mortgages or deeds of trust in Tennessee, they don't use a prevailing party provision. We think the Court should either impose a prevailing party provision or a carve-out, and Mr. Ragsdale is prepared to testify on that issue, but that's our position, and I'm sorry it's so – I can understand the Court's confusion."

Based on these statements by legal counsel for New Midland in the New Midland Bankruptcy Proceedings, this Special Master finds and concludes that New Midland expressed a concern and belief that the attorney's fees of Alcoa resulting from the lender liability claims in Bank Litigation would be covered by such Attorney's Fees Provisions in the event that New Midland was not successful in such litigation. Accordingly, New Midland was arguing for a "prevailing party" provision in the new Loan Documents or a "carve-out" of pending or pre-existing disputes (*i.e.*, the Bankruptcy Proceedings and Bank Litigation) from such provisions.

9

New Midland has continued to assert such an argument before this Special Master in its Response filed January 31, 2005, at page 20, where New Midland argues that Alcoa "by participating in the Bank Litigation... is merely participating in the process specifically sanctioned by the Bankruptcy Court and explicitly called for by the Amended Deed of Trust and Amended Note themselves".

The argument asserted by New Midland in the Bankruptcy Proceedings, and before this Special Master, that the parties did not intend for the language in the Attorney's Fees Provisions in the Loan Documents to apply to the Attorney's Fees Claims asserted by Alcoa in the Bankruptcy Proceedings and/or Bank Litigation, is not supported by either the dicta and/or specific findings of Judge Hyman at the October 10, 2003, hearing on these issues. After listening to the testimony of both experts and determining that the Attorney's Fees Provisions in the Loan Documents were "commercially reasonable", Judge Hyman stated (at Exhibit K, New Midland Response, Vol II, p. 8) as follows:

> "It [the Attorney's Fees Provisions] is, in fact, identical to the provisions that were in the debtor's pre-petition Loan Agreement. The defense is, or the objection to it is, that it may create a claim for attorney's fees in defending the lender liability case and that would, in essence, be unfair since the lender purchased the Note knowing that that lender liability claim was pending.
>
> I find, number one, that it is a commercially reasonable provision. That was the standard that I established at the time of confirmation.
>
> Secondly, I do not believe by inclusion in the current Loan Documents, it will create any greater rights for the lender than already existed as of the petition date. If the lender has a right to seek attorney's fees for defending that lender liability case, then that claim existed under the Fourth Loan Modification, and I think, in fact, it would be unfair to create an argument on behalf of the debtor by exclusion of that provision within the new Loan Documents, and, therefore, I will require that that provision be in the current Loan Documents.
>
> This ruling in no way is determining whether that provision is applicable to attorney's fees incurred in defending the lender liability case. The State Court is the best venue to determine that issue, and whether that provision is applicable in defending a lender liability case, it will be based on state law, not federal bankruptcy law."

10

This Special Master finds and concludes that the new Loan Documents approved by the Bankruptcy Court were not intended as a novation or alteration of any contractual or other rights of Alcoa to assert the applicability of the Attorney's Fees Provisions contained in the Original Note and/or Trust Deed to recover its attorney's fees and legal costs based on language and references to the pending Bank Litigation and Bankruptcy Court Proceedings. This argument of New Midland was rejected by Judge Hyman and is also rejected by this Special Master. The intention of the parties, and to some extent the Bankruptcy Court, is important in the interpretation of the Attorney's Fees Provisions as more particularly discussed below.

The foregoing ruling by Judge Hyman is particularly important in evaluating the applicability of the Attorney's Fees Provisions since New Midland had also specifically argued that the Attorney's Fees Provisions "should apply prospectively, *i.e.*, only to new litigation commenced after the new documents are signed by the parties, and that, as to pending litigation, a prevailing party fee provision would be appropriate". This quoted language is contained in paragraph 3 of the "Disputed Issues" submitted in a Pre-Hearing Stipulation that was presented to Judge Hyman prior to his October 10, 2003, hearing on the provisions of the new Loan Documents (see Pre-Hearing Stipulation contained in Exhibit N, New Midland Response).

As part of its review of the materials submitted to this Special Master, Alcoa provided a copy of a Transcript of a hearing before Judge Hyman held November 3, 2004, on a Motion by Alcoa to enforce a Bankruptcy Court Order to approve the new Loan Documents (see Exhibit 47, Alcoa Submission). At said hearing, attorneys for New Midland expressed a concern to Judge Hyman that "well, they [Alcoa] could, potentially could amend to seek relief, but they could seek their attorney's fees and other costs, and the attorney's fees in that action are substantial, and it wouldn't be in keeping with this Court's Order to allow what you call a collateral amount to be – to increase the amount of the debt". Apparently, New Midland was seeking a determination

from Judge Hyman that Alcoa could not increase the amount of the Amended Note to include attorney's fees and costs that might result from the Bank Litigation and other proceedings.

New Midland also argued that the confirmation Order in the Bankruptcy Proceeding would limit the amount or recovery by Alcoa as part of the confirmed Plan in the Bankruptcy Proceeding. At page 14 of the Transcript at said hearing, Judge Hyman rejected the New Midland argument that attorney's fees incurred by Alcoa post-petition are, or were, in any way altered, compromised, or impacted by the confirmed Plan. The Plan was confirmed as of January 20, 2000, the effective date of the Amended Note and Amended Deed of Trust.

Based on the statements (and/or rulings) by Judge Hyman, at the November 3, 2004, hearing, this Special Master finds and concludes that the confirmed Plan of New Midland in the Bankruptcy Proceedings was not intended to and did not as a matter of law reduce, alter, or otherwise limit the Attorney's Fees Claims of Alcoa pursuant to the Attorney's Fees Provisions contained in the Amended Note and Amended Deed of Trust, except for preparation of said Loan Documents. Further, any such attorney's fees and legal costs incurred by Alcoa from and after the effective date of the Plan (January 20, 2000) could potentially be recovered by Alcoa as part of its Attorney's Fees Claims even though the confirmed Plan in Bankruptcy had arbitrarily established the amount of the new Note at $5,400,000.00 without a provision for an increase in the principal amount for Attorney's Fees Claims. Therefore, this Special Master further finds and concludes that the Attorney's Fees Claims asserted by Alcoa, and their applicability under the Attorney's Fees Provisions, are to be solely determined under Tennessee State law and are not impacted or limited in any way by the confirmed Plan or any order by the Bankruptcy Court to limit such fees as part of the Bankruptcy Proceedings and/or the language contained in the new Loan Documents.

These statements and findings by Judge Hyman, as well as the terms and provisions of the new Loan Documents themselves, contradict and refute the arguments made by New

Midland in their Response to the effect that there "has not been any Note or Deed of Trust in place between New Midland and Coolidge [Alcoa] from January 20, 2000, to January 2005". As part of their argument, New Midland contends that since these Loan Documents were not actually executed by New Midland until November 2004, and by Alcoa until January 2005, there was no Note or Deed of Trust and, therefore, no Attorney's Fees Provisions to enforce or allow the Attorney's Fees Claims asserted by Alcoa (see Alcoa Response at pp. 16 and 17).

While the Amended Note contains language that it "completely amends, restates, and replaces the original Note, the Amended Note itself is dated to be effective as of January 20, 2000 (see Exhibit 7, Alcoa Submission). The Amended Deed of Trust contains a provision that states that the Bankruptcy Court has adopted, approved, and confirmed the reorganization plan to provide for the modification of the terms of the Modified Loan and "the Amendment and Restatement of the Existing Loan Documents" (see Exhibit 8, Alcoa Submission at page 5). The term "Existing Loan Documents" includes all of the original Loan Documents signed by New Midland and any modification agreements and exhibits thereto, including the original Note and original Deed of Trust.

Since it has already been determined that the amended Loan Documents contained the same Attorney's Fees Provisions as the original Loan Documents, the modification and replacement of the existing Loan Documents by the Amended Note and Amended Deed of Trust do not impact the applicable Attorney's Fees Provisions at any time period from the date of the execution of the original loan documents in 1988 through today's date, except fees relating to preparation of such documents.

Accordingly, this Special Master specifically finds and concludes that there has been no "gap" in the existence of any Loan Documents containing Attorney's Fees Provisions sought to be enforced by Alcoa in these proceedings. This finding is consistent with Judge Hyman's rulings on the continued availability of Attorney's Fees Claims by Alcoa notwithstanding the

13

confirmed Plan and the execution of additional Loan Documents as part of that Plan. The fact

that the parties continued to fight over the terms and provisions of the new Loan Documents for

over four (4) years after the confirmation of the Bankruptcy Plan in January 2000, does not limit

the enforceability or availability of the rights, liabilities, and obligations stated in such Loan

Documents (except for document preparation), especially since the parties agreed that the new

Loan Documents would be effective as of January 20, 2000. The Special Master reports and

recommends that this Honorable Court reject such an argument as illogical, unsupported by the

evidence, and inconsistent with the intent of the parties and the explicit language of the Loan

Documents, except fees incurred for preparation of such documents.

Alcoa became the owner of the underlying obligations represented by the original Note

and original Deed of Trust pursuant to a Loan Sale Agreement previously identified and attached

as Exhibit 10 to the Alcoa Submission. The Assignment of Deed of Trust and collateral

documents attached to the Loan Sale Agreement stated that it was executed and delivered by

First Union to Coolidge Somerset Alcoa, LLC (now Alcoa) on or about November 30, 1999.

The Loan Sale Agreement contains section 5.4 that recites that the principal balance of

the Note described therein was $5,305,991.84 at that time. However, Alcoa was able to purchase

the Note and the underlying obligations at a significant discount (see Exhibit 10, Alcoa

Submission, Section 2). Of particular relevance on the Attorney's Fees Issues is the last sentence

of section 5.4 that states "Seller shall be liable for all its costs, including attorney's fees and

disbursements, through the Closing Date including, without limitation, costs in connection with

this Agreement, the Litigation, and the Case" (see Exhibit 10, Alcoa Submission, at page 6). The

definitions of "Litigation" and "Case" contained in the Loan Sale Agreement identify the Bank

Litigation and the New Midland Bankruptcy Proceedings, respectively.

Alcoa purchased the underlying obligations and loan balances represented by the original

Note and Deed of Trust with knowledge of the pending Bank Litigation and the Bankruptcy

Proceeding and with the further knowledge that First Union (as the "Seller") would "continue to defend the Litigation through the date of Closing" (see section 7.8, Loan Sale Agreement, Exhibit 10 to Alcoa Submission). Alcoa also had the right to substitute counsel in the Bank Litigation and the Bankruptcy Proceedings after closing (see section 8.1, Loan Sale Agreement, at page 8).

Of particular relevance to the determination of the Attorney's Fees Issues are the terms and provisions of the Loan Sale Agreement contained in section 9 at page 9 of Exhibit 10. This section provides that Alcoa shall indemnify, defend, and save harmless First Union and its officers, directors, agents, etc. "from and against any and all loss, liability, expense or damage of any kind or nature, and from any suit, causes of action, claims, or demands whatsoever, including reasonable attorney's fees and costs relating to or arising out of (i) the Litigation and/or the Case; (ii) the Loan; (iii) the Loan Documents; or (iv) the NMPA property, except to the extent that any of the foregoing arise from the wrongful acts of Seller Indemnified Parties (First Union)." This section also required Alcoa to vigorously defend the Bank Litigation and to pay for the costs and travel expenses of First Union "excluding cost of legal counsel to [First Union] to monitor the Litigation in the Case". These provisions shall be referred to as the "**First Union Indemnification Provisions**".

There is no evidence in the Record, and no argument has been made by Alcoa, that New Midland agreed to, or participated in, any aspect of the Loan Sale Agreement. Beyond the Attorney's Fees Provisions (Tab 3) contained in the Amended Note and Amended Deed of Trust, this Special Master has been provided no documents that evidence any agreement or commitment by New Midland that requires New Midland to pay or reimburse attorney's fees and legal costs of First Union after the execution and delivery of the Loan Sale Agreement.

The Attorney's Fees Provisions inure to the benefit of the "Holder" defined in the Note, as amended (see Exhibit 7, Alcoa Submission). At all material times after execution and

Case 3:09-cv-00169   Document 13-11   Filed 06/29/09   Page 15 of 33   PageID #: 398

delivery of the Loan Sale Agreement, Alcoa was the "Holder" of the Note as that term is defined in the Note, as amended. Alcoa was the "Beneficiary" under the Deed of Trust, as amended, after the execution and delivery of the Loan Sale Agreement and no further rights, title, or interest in the Note and/or Deed of Trust, as amended, were retained by First Union therein from and after November 30, 1999 (see Exhibit 10, Alcoa Submission, at bate-stamp 001056).

Based on the Record as presented to the Special Master, there has been no evidence presented of any claims for attorney's fees or legal costs by First Union chargeable to New Midland after the Loan Sale Agreement was executed and delivered to Alcoa. Further, this Special Master finds and concludes that First Union paid and collected some portion, if not all, of its pre-sale attorney's fees and legal costs against New Midland from the setoffs and other recoveries that occurred on or about October 1, 1998, following the default by New Midland under the terms of the original Note and Deed of Trust by failure to pay the balances owing on the original Maturity date of September 30, 1998. This original Maturity Date was established by the Fourth Loan Modification Agreement dated as of January 1, 1996 (see Exhibit 46, Alcoa Submission).

At the time of the Preliminary Hearing on February 2, 2005, attorneys representing First Union referenced the setoffs from various cash collateral accounts as part of the accounting to determine the Loan Amount Due (see Preliminary Hearing Transcript at page 75, lines 18-25). There is a reference to $34,000.00 in attorney's fees and appraisal fees that were paid and/or collected by First Union from proceeds of the cash collateral accounts created by New Midland.

Based on these representations and a review of the Loan Sale Agreement and attachments thereto, this Special Master finds and concludes that no pre-sale attorney's fees and legal costs incurred by First Union were transferred to Alcoa for purposes of asserting Attorney's Fees Claims under the Attorney's Fees Provisions contained in the Amended Note and/or Amended Deed of Trust. This finding by the Special Master is consistent with the language in section 5.4

16

of the Loan Sale Agreement that provides that First Union shall be liable for its costs, including attorney's fees and disbursements through the Closing Date (November 30, 1999), including costs in connection with the Bank Litigation and the Bankruptcy Proceedings. These findings relate directly to and impact the Attorney's Fees Claims (see Tab 5) asserted by Alcoa under Categories 1, 2, 6, and 7 of the Attorney's Fees Categories discussed in more detail below.

## II. RELEVANT STATUTORY AND CASE LAW

Since the Special Master has been called upon to rule upon the language of the Attorney's Fees Provisions, basic rules of contract, construction, and interpretation must be reviewed and followed. In construing written contracts governed by Tennessee law, Courts are to look not only to language of instruments, but also must ascertain the intention of the parties, if possible. *Safeco Ins. Co. of America vs. City of White House*, 36 F.2d 540 (6th Cir. 1994). The intent or understanding of one party to the contract, uncommunicated to the other by word, action, or circumstance, cannot have any binding effect upon the other. *Kozy vs. Werele*, 902 S.W.2d 777 (Tenn. Ct. App. 1994).

When Tennessee Courts take action to determine the intention of parties to contracts, it is not necessary for the Court to ascertain each party's state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *Rainey vs. Stansell*, 836 S.W.2d 117 (Tenn. Ct. App. 1992). If the clear contractual language reveals the intent of the parties, there is no need for a Court to apply rules of construction. *Warren vs. Metropolitan Government of Nashville*, 955 S.W.2d 618 (Tenn. Ct. App. 1997). Ambiguity does not arise in a contract merely because the parties may differ as to the interpretation of certain of its provisions, and a strained construction may not be placed on language used to find ambiguity where none exists. *Ibid*.

To arrive at the intentions of the parties, it is permissible to consider circumstances of the parties at the time the contract was formed, and the conduct of contracting parties is the strongest

evidence of their original intent. *Jennings vs. Hayes*, 787 S.W.2d 1 (Tenn. Ct. App. 1990). However, subsequent acts of parties that may shed light on a contract's meaning will be applicable only where the terms of the contract are ambiguous or uncertain. *Bonastia vs. Berman Bros., Inc.*, 914 F. Supp. 1533 (W.D. Tenn. 1995).

In 1983, Tennessee enacted T.C.A. §47-50-112 entitled *"Contracts in Writing as Prima Facia Evidence of Intent of Parties; Written Waiver"*. This Code section codifies general rules of common law for construction of contracts and requires that all contracts "shall be *prima facia* evidence that the contract contains the true intention of the parties, and shall be enforced as written". See T.C.A. §47-50-112(a). Further, subsection (c) of this statute provides that no waiver of any terms or provisions in a note or deed of trust shall be valid "unless such waiver is in writing" and prohibits any Court from giving effect to any such waiver unless it is in writing.

This Special Master finds that the Amended Deed of Trust, at paragraph 35 on page 32 thereof (see Exhibit 8, Alcoa Submission) provides that no delay or failure by Beneficiary [Alcoa] shall constitute a waiver of any right or estop Alcoa from exercising such rights as described therein. Further, the Amended Note contains a provision on page 6 of Exhibit 7, Alcoa Submission that provides in pertinent part as follows:

> "The waiver by Holder or failure to enforce any covenant or condition of this Note, the Amended Deed of Trust, the Amended Assignment of Leases, or the other Loan Documents, or to declare any default thereunder or hereunder, shall not operate as a waiver of any subsequent default or affect the right of Holder to exercise any right or remedy not expressly waived in writing".

Based on the language contained in the aforesaid documents, the Special Master finds and concludes that the Amended Note and the Amended Deed of Trust contain non-waiver provisions in favor of Alcoa relating to the declaration of default or any other rights or remedies available to Alcoa under said Loan Documents. Further, this Special Master has been provided no evidence or other proof that Alcoa has executed a written waiver of such rights or has

18

otherwise rescinded, in writing, the non-waiver provisions cited above. Therefore, pursuant to T.C.A. §47-50-112(c) "no Court shall give effect to any such waiver unless it is in writing."

Any argument or position asserted by New Midland to the effect that Alcoa has waived (or novated) any of its rights to pursue the Attorney's Fees Claims are not supported by the evidence and/or Record presented to this Special Master. While Alcoa did not make a formal demand on New Midland for its attorney's fees until December 15, 2004 (see Exhibit 28, Alcoa Submission) as supplemented by follow up letter of January 3, 2005 (see Exhibit 31, Alcoa Submission), prior or inconsistent actions (or inactions) by Alcoa on making demand for its attorney's fees and legal costs **cannot** constitute a waiver of their contractual rights under controlling Tennessee law unless such waiver is specifically stated in writing (see T.C.A. §47-50-112(c)).

Based on the controlling terms and provisions of common and statutory law in Tennessee, this Special Master has determined that the language contained in the Attorney's Fees Provisions (see Tab 3) are "plain and unambiguous" and contain no meaning that is uncertain or susceptible to more than one reasonable interpretation. The fact that Alcoa and New Midland differ as to the interpretation of certain provisions does not require a different result or finding by the Special Master (see *Warren*, *supra*).

Further, as part of the interpretation of the Attorney's Fees Provisions, the Special Master has determined that the Amended Note and Amended Deed of Trust should be read *in para materia* since they were executed and delivered simultaneously by and among Alcoa and New Midland and contain cross-references to each instrument to reflect both the underlying obligations and rights and liabilities evidenced therein (see Exhibits 7 and 8, Alcoa Submission). Other than the deletion of the words "the preparation, administration, amendment, and modification..." from the original Note (see Exhibit 27, Alcoa Submission), the Attorney's Fees

Provisions contained in the Amended Note and Amended Deed of Trust are virtually identical to those same provisions in the original Note and original Deed of Trust.

Both the Amended Deed of Trust and the Amended Note allow recovery of attorney's fees and legal costs by Alcoa to "enforce" the Note; further, the Amended Deed of Trust provides for recovery of reasonable and necessary costs, expenses, and counsel fees whether or not litigation is instituted and/or if Alcoa engages counsel to collect any of the indebtedness "or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this Amended Deed of Trust or the Note" (see Exhibit 8, Alcoa Submission, at section 23).

In its Response and argument, New Midland has vigorously argued that most if not all actions taken by Alcoa in the New Midland Bankruptcy Proceedings and/or Bank Litigation were not "enforcement" or attempts "to enforce" the Amended Note and/or the Amended Deed of Trust (see New Midland Response at page 17, and in numerous pages of the Preliminary Hearing Transcript). New Midland further argues that it continued to timely and promptly pay all payments required under the aforesaid Loan Documents, which precluded any "enforcement" by Alcoa under the terms of the Amended Note and/or Amended Deed of Trust. Finally, New Midland argues that the Attorney's Fees Claims of Alcoa cannot apply to the Bank Litigation and/or the New Midland Bankruptcy Proceedings because of the inclusion of paragraphs 42 and 43 in the Amended Deed of Trust (see Exhibit 8, Alcoa Submission, at page 34).

This Special Master finds and concludes that the aforesaid arguments asserted by New Midland are without merit and would require a strained interpretation of otherwise unambiguous and plain terms and language in the Attorney's Fees Provisions. On or about September 12, 2001, a Third Amended Complaint was filed by New Midland in the Bank Litigation (see Exhibit 36, Alcoa Submission). In the prayers for relief contained therein, New Midland asked the Court to declare "that the Note is null and void and of no further force and effect, and that the Mortgage be stricken of Record (see Exhibit 36, Alcoa Submission at page 23). Further, the very

fact that New Midland insisted on inserting paragraphs 42 and 43 into the Amended Deed of Trust to assert a "setoff and deduction of any sums due and payable by [New Midland] pursuant to this Amended Deed of Trust and/or pursuant to the Note" clearly indicates that the actions taken by New Midland in the Bank Litigation and in the New Midland Bankruptcy Proceedings were "suits or proceedings affecting the Mortgaged Property" (see Exhibit 8, Alcoa Submission, at pages 28 and 34).

New Midland's arguments that its tort and/or contractual claims asserted in the Bank Litigation are somehow separate and/or removed from coverage under the Attorney's Fees Provisions are not supported by legal authority and would strain construction placed on the language in the relevant Loan Documents (see *Warren, supra*). At every opportunity in both the New Midland Bankruptcy Proceedings and in the Bank Litigation, New Midland has attempted to hold the Mortgaged Property "hostage" to its attempts to obtain a setoff or deduction in the amount owing to Alcoa pursuant to the terms of the Amended Note and/or Amended Deed of Trust. The allegations or arguments that New Midland was pursuing tort claims and/or wrongful actions of First Union and/or Alcoa in the Bank Litigation may be relevant for determination of issues vis-à-vis First Union and Alcoa in their pending litigation (see Exhibit F, New Midland Response) or in relation to the First Union Indemnification Provisions discussed above, but such allegations and arguments do not provide a proper basis to preclude the assertion of Attorney's Fees Claims by Alcoa against New Midland in the Bank Litigation.

In the case of *Williams vs. Federal Deposit Insurance Corporation*, 155 Ill. App. 3d 633, 508 N.E. 2d 337 (1987), arguments similar to those asserted by New Midland were made in a case in which the Plaintiff sought injunctive relief and claims for "fraudulent misrepresentation" on the part of the defendants. The FDIC, as successor to the underlying loans and obligation asserted against the Plaintiff, sought recovery of its attorney's fees for the prosecution of its counter-claims as well as the defense of the claims asserted by the Plaintiff, including injunctive

relief. The Plaintiff had also asserted a setoff defense similar in theory to the facts and circumstances *sub judice*.

The Illinois Appellate Court determined that the FDIC was entitled to recover its attorney's fees for the prosecution of its counterclaims to enforce its Note as well as for the defense of the claims asserted by the Plaintiff. The Court further held that "the FDIC's efforts to defeat the setoff defense was a necessary and integral part of collecting on the Note". See *Williams*, *supra*, at page 4. The holding in *Williams* supports substantial portions of the Attorney's Fees Claims asserted by Alcoa as discussed herein.

Both of the parties have provided briefs and legal arguments pertaining to the application of the American Rule, which generally provides that counsel fees and litigation expenses are not recoverable by the litigating parties absent a statute or a contractual term that permits such recovery and is not violative of public policy. See *22 Am Jur 2d Damages*, Section 611. There are exceptions to the American Rule not applicable in this case.

It would appear that a majority of jurisdictions in the United States follow this doctrine, including Tennessee. However, Alcoa contends that the case of *Julian vs. American National Bank*, 113 S.W.2d 746 (Tenn. 1938) provides the general rule in Tennessee to liberally permit payment of attorney's fees when contracts and/or notes contain language that one party is to pay the other reasonable attorney's fees under certain circumstances. New Midland argues that the case of *Smith vs. Crossman*, 2004 LEXIS 502 (Tenn. Ct. App. 8204), requires a very strict and literal interpretation of contracts containing attorney's fees clauses in the context of enforcement of a Lease (see New Midland Response at pages 23 and 24).

While the case of *Smith vs. Crossman*, supra, contains language involving "enforcement" that appears to be persuasive on some of the issues between these parties, the facts in that case appear to be distinguishable from the relevant facts in the Bank Litigation. For instance, the Tenant in the *Crossman* case was seeking to "enforce the Lease" when it believed its Landlord

was violating the terms of the contract between the parties. In the Bank Litigation, New Midland is attempting to revoke, rescind, and/or declare "null and void" the Amended Note and Amended Deed of Trust. This Special Master finds and concludes that the efforts by Alcoa to resist New Midland's lender liability claims constitutes action "to enforce" both the Note and the terms, agreements, and provisions of the Amended Deed of Trust.

Based on this same reasoning, the attempts by New Midland to "cram down" unfavorable loan terms in the New Midland Bankruptcy Proceeding during the confirmation process required Alcoa to defend and enforce the terms and provisions of both the Note and Deed of Trust. As discussed above, the attempts by New Midland to "carve-out" attorney's fees and legal costs incurred in the Bank Litigation from the Attorney's Fees Provisions further required Alcoa to respond and defend its rights to enforce the Note and Deed of Trust, as amended. Further, Judge Hyman's refusal to modify substantially all of the Attorney's Fees Provisions, and his statements that the applicability of said provisions to recovery of attorney's fees would be determined by the Tennessee State Court, indicates and evidences Alcoa's success in defending its position on these issues; otherwise, New Midland may have been successful in obtaining substantive changes to the Attorney's Fees Provisions that would substantially and negatively impact the right to assert recovery of the Attorney's Fees Claims asserted by Alcoa.

## D. SPECIFIC FINDINGS AND CONCLUSIONS ON ATTORNEY'S FEES CATEGORIES

Based on all of the foregoing, this Special Master makes the following determinations as to those particular Attorney's Fees Categories (see Tab 5) that are included and otherwise covered by the Attorney's Fees Provisions (see Tab 3) contained in the Amended Note and/or Amended Deed of Trust. Each of the Attorney's Fees Categories designated by Alcoa in its Motion and Submission will be discussed below based on the findings and conclusions of this Special Master.

## CATERGORY 1. FIRST UNION'S FEES INCURRED IN ENFORCING ITS REMEDIES UNDER THE LOAN DOCUMENTS PRIOR TO NEW MIDLAND BANKRUPTCY PROCEEDINGS

The Special Master finds and concludes that Alcoa is **not** entitled to recover any of its Attorney's Fees Claims that correspond to this Category No. 1 for several reasons, including the language previously quoted from the Loan Sale Agreement (see Exhibit 10, Alcoa Submission). The Loan Sale Agreement was executed and delivered between First Union and Alcoa after the default declared by First Union on or about October 1, 1998. The terms and provisions of section 5.4 of said Agreement clearly state that First Union is responsible for its legal costs and expenses "in connection with the Litigation and the Case" to the Closing Date (November 30, 1999). New Midland filed for bankruptcy protection on August 30, 1999 (see Exhibit 5, Alcoa Submission).

If First Union did not prevail itself of its rights and remedies against New Midland to recover its attorney's fees and costs prior to the Loan Sale Agreement, then First Union lost that right as against New Midland, and against Alcoa, based on the clear and unambiguous terms of this section. As previously stated, there is some indication that First Union paid and/or collected some of its attorney's fees prior to the Loan Sale Agreement, but the Record is not completely clear on that issue and no proof was presented by any party as to the amounts of such fees in any event.

Further, after Alcoa became the "Holder" of the Amended Note and the "Beneficiary" under the Amended Deed of Trust, this Special Master is aware of no contractual agreement, doctrine, or theory that would allow First Union to assert any rights to recover its attorney's fees and/or costs against New Midland, directly or vicariously through the First Union Indemnification Provisions. Such an attempt to "tack on" litigation fees and expenses of a prior owner of the loan obligations appears to violate both the American Rule and is in conflict with the requirements to enforce the true intention of parties pursuant to T.C.A. §47-50-112.

Neither the Loan Sale Agreement or any proof provided to the Special Master reflects that underlying claims for attorney's fees incurred by First Union were "assigned" to Alcoa as part of the Loan Sale Agreement. The Special Master cannot determine what portion of any Attorney's Fees Claims of First Union were within the contemplation of the parties to the Loan Sale Agreement based on the available Record. The fact that Alcoa "bought into" the pending Litigation and Bankruptcy Proceeding appears to part of the justification for the deep discount of the purchase price of the underlying loan now evidenced by the Amended Note. Alcoa's agreement to the First Union Indemnification Provisions does not in any way permit or authorize it to collect First Union's prior attorney's fees and expenses against New Midland since New Midland could not possibly have contemplated and intended such a result at the time it executed the original Loan Documents.

For the above-specified reasons, as well as the previous findings and conclusions as may be relevant thereto, Alcoa's request for Attorney's Fees Claims based on Category 1 of the Attorney's Fees Categories is DENIED.

### CATEGORY 2. FIRST UNION'S FEES INCURRED IN DEFENDING ITS RIGHTS UNDER THE LOAN DOCUMENTS IN NEW MIDLAND'S BANKRUPTCY PROCEEDINGS PRIOR TO THE SALE OF THE LOAN BY FIRST UNION TO ALCOA ("LOAN SALE")

For the same reasons stated by the Special Master in Category 1 set forth above, Alcoa's request for recovery of its Attorney's Fees Claims based on Category 2 of the Attorney's Fees Categories is DENIED. As further grounds for this denial of such claims, the Special Master is not convinced that Attorney's Fees Claims of First Union were intended to be transferred for collection purposes to Alcoa at any time material to these proceedings. The fact that Alcoa filed a Proof of Claim in the New Midland Bankruptcy Proceedings dated January 3, 2000, reserving its rights to include "pre-petition attorney's fees" is not sufficient alone to create a right in favor of Alcoa if no such right was intended by First Union under the Loan Sale Agreement or if First Union had already paid or collected its own attorney's fees.

25

## CATEGORY 6. FIRST UNION'S AND FRAIMOW'S FEES INCURRED RELATING TO THE TENNESSEE STATE COURT LITIGATION FOLLOWING THE LOAN SALE

These particular fees requested by Alcoa are identified as Category 6 of the Attorney's Fees Categories and will be taken out of sequence for convenience. This Special Master finds and concludes that Alcoa is **not** entitled to recover its Attorney's Fees Claims for this particular Attorney's Fees Category based on the same reasoning set forth above for Categories 1 and 2. In addition to the findings and conclusions by the Special Master referenced above, this Special Master finds that the First Union and Fraimow fees incurred in the Bank Litigation were in defense of the alleged wrongful acts asserted by New Midland against First Union and Fraimow. Such potential expenditures and liability were clearly contemplated by First Union and Alcoa during the negotiation of the Loan Sale Agreement as set forth in Section 9 of the Loan Sale Agreement (see Exhibit 10, Alcoa Submission).

As previously stated, the Special Master has not reviewed any legal authority which would justify the "tacking on" of any potential First Union Indemnity Provisions or claims that may be assessed to Alcoa as part of the Attorney's Fees Claims asserted against New Midland. Such an interpretation would strain the clear and unambiguous language of the Attorney's Fees Provisions contained in the Amended Note and Amended Deed of Trust, since neither First Union nor Fraimow were the "Holder" and/or "Beneficiary" of the Loan Documents following the execution of the Loan Sale Agreement. For these and the foregoing reasons described in Categories 1 and 2 above, the request by Alcoa for recovery of its Attorney's Fees Claims relating to Category 6 are DENIED.

## CATEGORY 7. FIRST UNION'S FEES INCURRED IN REOPENING THE RIVERVIEW TOWER BANKRUPTCY PROCEEDING

During the course of the First Meeting and the Preliminary Hearing, very little if any evidence, argument, or documentation was presented on this Category 7 of the Attorney's Fees Categories. Other than providing a copy of a Complaint filed in the United States District Court

26

for the Eastern District of Tennessee involving *Textron vs. Riverview Tower Limited Partnership, et al.* (see Exhibit 26, Alcoa Submission), this Special Master cannot determine any relevant connection between First Union fees incurred in reopening the Riverview Tower Bankruptcy Proceeding and the Attorney's Fees Issues. This Special Master believes and therefore concludes that his reasoning and findings set forth above for Categories 1, 2, and 6 are dispositive of the request by Alcoa for recovery of any Attorney's Fees Claims based on this Category 7 of the Attorney's Fees Categories; accordingly, Alcoa's claim on Category 7 is DENIED.

## CATEGORY 3. ALCOA'S FEES INCURRED IN DEFENDING ITS RIGHTS UNDER THE LOAN DOCUMENTS IN NEW MIDLAND'S BANKRUPTCY PROCEEDINGS FOLLOWING THE LOAN SALE

Based on the Findings and Conclusions of this Special Master set forth in Section C above, this Special Master finds and reports that Alcoa is entitled to its reasonable and necessary attorney's fees and legal expenses for Category 3 of the Attorney's Fees Categories. To the extent that the Attorney's Fees Claims (see Tab 4) involve legal fees and expenses identified and connected to this Category 3, the Special Master concludes and finds that the Attorney's Fees Provisions (Tab 3) cover and otherwise apply to such claims provided that they are "reasonable and necessary costs and expenses, whether or not suit is instituted".

This Special Master further finds and concludes that this Category of Attorney's Fees Claims became due and payable "on demand" from New Midland from and after December 15, 2004. As stated below, this Special Master reserves his determination of what constitutes "reasonable and necessary" costs and expenses for later determination after compliance with the Scheduling Order in Section E herein identified below.

## CATEGORY 4. ALCOA'S FEES INCURRED IN DEFENDING THE TENNESSEE STATE COURT LITIGATION

The reasonable and necessary fees, expenses and legal costs incurred by Alcoa in the Bank Litigation are recoverable by Alcoa as part of its Attorney's Fees Claims based on the

27

Attorney's Fees Provisions. The relevant portions of the Findings and Conclusions of this Special Master set forth above are referred to and incorporated herein by reference. Further, to the extent that Alcoa incurs attorney's fees and legal expense in continuing its participation as a party to the Bank Litigation proceedings, its additional attorney's fees and expenses are also recoverable as part of Category 4 of the Attorney's Fees Categories to the extent that such fees and expenses are determined to be "reasonable and necessary" pursuant to the Scheduling Order.

### CATEGORY 5. ALCOA'S FEES INCURRED IN REOPENING NEW MIDLAND'S BANKRUPTCY PROCEEDING AND LITIGATION OF THE TERMS OF THE LOAN DOCUMENTS

This Category 5 of the Attorney's Fees Categories has been difficult for this Special Master to review and completely understand based on the Record provided to the Special Master at this time. As set forth above, the Special Master has reviewed numerous Bankruptcy Court Transcripts and Proceedings in relation to litigation involving the drafting and approval of new Loan Documents under the jurisdiction of the Bankruptcy Court.

Based on its Findings and Conclusions set forth above relative to enforcement and/or defense of its rights under the Amended Note and Amended Deed of Trust, the Special Master finds and concludes that Alcoa is entitled to recover that portion of its Attorney's Fees Claims involving litigation of the terms of the Loan Documents, **but not any portion of such Attorney's Fees Claims relating to "preparation, administration, amendment, or modification" of the Loan Documents**. Since these provisions were specifically omitted from the Amended Note (see Tab 3), and based on portions of the Bankruptcy Transcripts provided to the Special Master (see prior Transcripts, including Exhibit K, New Midland Response), this Special Master concludes that Alcoa is not entitled to those portions of its Attorney's Fees Claims for preparing drafts and revisions of the Amended Note, Amended Assignment (see Exhibit 9, Alcoa Submission), and Amended Deed of Trust. This Special Master is aware that his ruling may be difficult to administer as part of determining the amounts of the Attorney's

28

Fees Claims to which Alcoa seeks entitlement; however, the exclusion of their language from the original Note into the Amended Note relating to preparation of these documents requires this result.

## E. PROCEDURE AND SCHEDULE FOR RESOLVING ATTORNEY'S FEES CLAIMS

Based on the Findings and Conclusions reported by this Special Master herein relative to the Attorney's Fees Categories that are covered by the Attorney's Fees Provisions, the Special Master hereby orders, authorizes, and directs the following procedure and schedule (the "**Scheduling Order**") for determining the "reasonable and necessary" amounts of such Attorney's Fees Claims to which Alcoa is entitled as part of its indebtedness and amount due under the Amended Note and Amended Deed of Trust. As previously stated in this Report to avoid unnecessary disclosures and additional expenses relating to discovery of attorney's fees, the Special Master understood that the parties would await his determination as to which Attorney's Fees Categories, if any, that should be part of further proceedings.

Based on the foregoing Findings and Conclusions of the Special Master, the Special Master directs that any and all attorney's fees, statements, billings, and/or itemizations that evidence, reflect, or provide calculations for those portions of the Attorney's Fees Claims sought by Alcoa and allowed by this Special Master shall be provided by Alcoa to legal counsel for New Midland as soon as possible, and no later than two (2) calendar days from the filing and service of this First Supplement (by February 18, 2005). This Special Master believes that this is sufficient time to allow the production of such documents and writings since Alcoa should have anticipated that disclosure would be required to allow New Midland and its legal counsel a full and fair opportunity to review this portion of the damages claims and rights asserted by Alcoa in the Bank Litigation.

This Special Master is hopeful that due to the time restraints placed on the parties pursuant to the Order of Reference, as amended, that Alcoa will provide the relevant

documentation on these Attorney's Fees Claims to New Midland and its legal counsel within the two (2) calendar day time frame. Failure to provide such documentation shall preclude any recovery for Attorney's Fees Claims not timely disclosed and documented by such production.

From and after the date of actual receipt by New Midland's legal counsel of such documentation, New Midland shall have five (5) calendar days to review such submissions and to prepare any written objections thereto (the **"New Midland Objections"**). The New Midland Objections, if any, shall be filed and served prior to February 23, 2005, with copies to be provided to this Special Master. Thereafter, Alcoa shall have two (2) calendar days to reply to the New Midland Objections which shall extend through and include February 25, 2005, even if New Midland files its objections earlier.

If the parties are not able to resolve and/or stipulate the recoverable amount of Attorney's Fees Claims during this process, the Special Master shall hold a hearing to resolve the New Midland Objections on the 9th day of March, 2005, beginning at 9:00 a.m. local time at the offices of the Special Master or such other location as the parties may mutually agree (the **"Final Hearing"**). Any briefs or submissions to the Special Master on the New Midland Objections or Alcoa's Reply thereto, must be filed and served on the Special Master and opposing counsel at least two (2) calendar days prior to said Final Hearing. Thereafter, no further submissions by any party shall be allowed, except for extreme hardship upon cause shown.

This Special Master understands that this Scheduling Order allows very limited time for depositions and/or discovery pursuant to the Tennessee Rules of Civil Procedure; however, the terms of the Order of Reference, as supplemented, require that the Special Master provide his Report on the Attorney's Fees Claims and any other amounts due from New Midland to Alcoa on or before March 12, 2005. This Special Master will be glad to accommodate legal counsel for the parties by teleconference or otherwise to discuss discovery issues and/or other matters that may properly come before the Special Master.

On the issues concerning whether or not Attorney's Fees Claims are "reasonable and/or necessary", this Special Master finds and concludes that such issues are normally within the province of the Court or other judicial officer as a matter of law, subject to limitations on legal counsel for the parties required by ethical considerations contained in Tenn. Sup. Ct. R. 8, Rules of Professional Conduct, specifically Rule 1.5. Therefore, the determination of what is "reasonable and necessary" will, in all likelihood, be a question of law for this Special Master to decide and report to this Honorable Court and should not require significant discovery by the parties. However, whether or not a portion of the Attorney's Fees Claims have been properly categorized by Alcoa may be very relevant for determination, argument, and/or discovery by the parties. The Special Master reserves the right to alter and/or amend the Scheduling Order after the initial production of such documents by Alcoa.

## F. OTHER MATTERS AND DETERMINATIONS

As part of the Attorney's Fees Claims inserted by Alcoa, there are court reporter's fees, expert witness fees, and fees for the services of Special Master Robert P. Murrian contained therein (see Tab 4). This Special Master is aware that the parties have agreed to pro-rata division and payment of fees incurred by each Special Master in these proceedings (for instance, Alcoa and New Midland have agreed to split the fees and expenses of this Special Master). However, whether or not a party may recover fees of a Special Master is controlled by TRCP 54.04 involving costs. This proposition has been recently approved by the Tennessee Court of Appeals in the case of *Johnston vs. Houston*, 30 TAM 5-18, dated December 30, 2004.

Therefore, to the extent that Special Master fees are included in the Bill of Cost prepared by the Clerk and Master, and unless this Honorable Court directs otherwise, TRCP 54.04(1) provides that costs shall "be allowed to the prevailing parties". Certain other costs not normally included in a Bill of Costs prepared by the Clerk and Master are only allowable in the Court's discretion. These "discretionary costs" include reasonable and necessary court reporter expenses

and reasonable and necessary expert witness fees for deposition and for trial. See TRCP 54.04(2).

This Special Master is not aware of the status of any request by Alcoa for recovery of its discretionary costs for court reporter fees and expert witnesses fees, including the fees of Jeffrey Wall. Such discretionary costs and fees are "allowable only in the Court's discretion" and must also be reasonable and necessary. Upon compliance with TRCP 54.04(2), this Special Master recommends and reports that the Bill of Costs and all discretionary costs should be allowed to Alcoa and should be considered and included as part of the Attorney's Fees Claims recovered by Alcoa for all purposes.

To the extent that there are other matters, rulings and/or determinations involving the issue of any and all funds due to Alcoa from New Midland, including default rate of interest and additional attorney's fees that may be incurred by Alcoa during these proceedings, this Special Master reserves the right to rule on such issues at the Final Hearing on March 9, 2005, or as soon thereafter as possible.

Respectfully submitted this _16th_ day of February, 2005.

Respectfully submitted by:

J. Michael Winchester, Special Master
BPR #006049

Winchester, Sellers, Foster & Steele, P.C.
Suite 1000, First Tennessee Plaza
800 South Gay Street
Knoxville, TN 37929
Phone: (865) 637-1980

I hereby certify that the within is a true
Copy of the original filed in this court.

Clerk & Master

32

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and exact copies hereof (without exhibits previously provided) have been served upon all parties in interest or their counsel by delivering a copy hereof to the following parties via United States Mail, facsimile transfer, or hand delivery, properly addressed and with sufficient postage thereupon to carry the same to its destination:

David L. Braverman, Esq.
Braverman, Kaskey & Caprara
One Liberty Place, 21st Floor
Philadelphia, PA 19103-7334
*Via regular mail* and
*fax to: (215) 575-3801*

James S. Chase, Esq.
John A. Lucas, Esq.
Hunton & Williams
900 S. Gay St., Suite 2000
Knoxville, TN 37902
*Via hand delivery*

Thomas S. Scott, Jr., Esq.
Ball & Scott
550 West Main Avenue, Suite 750
Knoxville, TN 37902
*Via hand delivery*

Charles W. Van Beke, Esq.
Wagner, Myers & Sanger
800 S. Gay Street, Suite 1801
Knoxville, TN 37902
*Via hand delivery*

David T. Black, Esq.
329 Cates Street
Maryville, TN 37804
*Via hand delivery* and
*fax to: (865) 982-5776*

Brian P. Flaherty, Esq.
Wolf, Block, Schorr & Solis-Cohen
1650 Arch Street
Philadelphia, PA 19103
*Via regular mail* and
*fax to: (215) 405-2948*

This _16th_ day of February, 2005

Winchester, Sellers, Foster & Steele, P.C.

By: _Michael Winchester_

W:\JMW\New Midland Plaza\First Supplement to Report.doc

33