NEW MIDLAND PLAZA ASSOCIATES,
ET AL.,

      *Plaintiffs,*

v.

FIRST UNION NATIONAL BANK, ET AL.,

~~FILED~~
**FILED**
SEP 23 2005
JAMES A. CARROLL
CLERK & MASTER

Civil Action No. E-18053

## ALCOA'S MOTION FOR IMMEDIATE DISBURSEMENT OF THE FUNDS IN THE COURT REGISTRY

Alcoa Calderwood, LLC ("Alcoa") moves for an order directing immediate disbursement to Alcoa (via check to its counsel) of, and confirming title in Alcoa to, the $1,540,559.00 deposited in the registry of the Court on or about March 18, 2005, together with the interest accrued thereon ("Registry Funds"). In addition, Alcoa moves for an order directing New Midland Plaza Associates ("New Midland") to immediately pay Alcoa the difference between the total amount of the Registry Funds and the sum of $1,629,872.40.

On March 3, 2005, New Midland entered into an agreement with Alcoa which provided that Alcoa would be entitled to payment of funds deposited with the Court immediately upon the issuance of a Report by Special Master J. Michael Winchester regarding the amount of attorney's fees and expenses owed by New Midland to Alcoa. The Court stated that it "expressly approve[d] the deal that has been recited and placed in the record,"[1] and later ordered the parties to perform according to their agreement.[2] The Special Master has now ruled that Alcoa is entitled to $1,629,872.40 on account of the attorney's fees and other litigation expenses New Midland has forced Alcoa to incur in New Midland's protracted fight against its lenders.

---

[1] See transcript of the March 3, 2005 hearing before the Court ("March 3 transcript"), attached hereto as Exhibit A, at 47.

[2] See Order dated March 15, 2005.

**EXHIBIT**

K

**The March 3 Agreement of the Parties, Expressly Accepted by the Court, Provided for the Release of the Registry Funds to Alcoa Immediately After Special Master Winchester's Report.**

At the March 3, 2005 hearing, counsel for New Midland proposed that, in order to facilitate refinancing of the New Midland Center, New Midland would pay an amount into the Court as security for the amount awarded to Alcoa by the Special Master. Specifically, New Midland stated that

> We will continue with Mr. Winchester, he will have the hearings he's going to have between now and April 8,[3] he will decide what he is going to decide. He will recommend to the Court on April 8, we will be here the next day or in keeping with the Court's schedule, we will say that is okay with us and it will be paid.

March 3 Transcript, Exhibit A, at 20, lines 17-23 (emphasis added). New Midland continued to repeat that a key benefit to Alcoa of New Midland's proposal would be that, after the Special Master's final report, the money would not be detained in the Court even if New Midland attempted to litigate further:

> On April 9 they will be paid every single dollar of the principal that is due. There will be no setoff. We are not challenging that anymore. On April 9 it will be paid, finished. Attorneys' fees, whatever Mr. Winchester finds is due on April 9 in his final report, we will pay on April 9 period.

*Id.* at 22, lines 6-12. In addition, New Midland proposed that it would pay any amount awarded by the Special Master that exceeded the amount deposited into the registry of the Court:

> I will go even further, Your Honor, if that is not enough and Mr. Winchester decides there is another $5,000 due, we'll pay it. All I'm saying is that we will pay this into the Court now, and this is a totally reasonable sum to secure them until April 8, and then we[']re done.

---

[3] On March 3, 2005, the Court set April 8, 2005 as the date for the Special Master to enter his final report regarding the amount of attorney's fees owed by New Midland to Alcoa. March 3 Transcript at 3-4. The Court later postponed that date over Alcoa's objection.

*Id.* at 25, lines 19-25. After a break during which the parties discussed possible resolutions of the motions pending before the Court, and ways to allow the New Midland Center to be refinanced, counsel for Alcoa and New Midland stated their agreement to the proposal that New Midland pay certain funds into Court. Specifically, counsel for New Midland described Special Master Winchester's role with respect to the attorney's fee dispute as that of a "binding arbitrator:"

> ... out of the proceeds of the refinancing, the sum of $1,540,544 will be paid to the registry of the Court. ... subject to the Court's disposal following the receipt of the report of Master Winchester currently planned to be filed by Master Winchester on April 8 in accordance with the new schedule agreed upon today. At that point neither party will object to the report of Master Winchester, he will in effect become kind of a binding arbitrator, if you will, and nobody will object to his report. And out of that 1,540,544 will be paid any amounts that he deems due to New Midland – excuse me, to Alcoa from New Midland.

*Id.* at 33, lines 1-3, 6-17 (emphasis added).

As to the timing of the payment of the funds, counsel for New Midland again stated that: "the final distribution is [to be] made as the immediate aftermath of Winchester's report." *Id.* at 36, lines 8-10 (emphasis added), and would include payment of any "excess" amount owed by New Midland over the approximately $1.5 million amount deposited with the Court. *Id.* at 36, line 25 through p. 37, line 3 ("if the amount determined by Master Winchester exceeds the amount that is in the registry of the Court that New Midland will make up that amount.").

New Midland promised that "there [will be] no appeal or objections to whatever [Special Master Winchester] rules [in his final report]." *Id.* at 39, lines 1-2. Relying on New Midland's agreement to treat Special Master Winchester's report as final, the Court accepted and ordered the parties' proposal allowing New Midland to refinance its property and avoid foreclosure. Alcoa having also relied on the agreement, New Midland should not now be permitted to change its position to Alcoa's prejudice.

## Conclusion

Using New Midland's counsel's own words, the "immediate aftermath" of the Special Master's final report has arrived. The parties' March 3 agreement, which was expressly accepted by the Court, is clear: New Midland would not prevent, and Alcoa would be <u>immediately</u> entitled to, payment of the amount awarded by Special Master Winchester, effective upon the filing of the Special Master's Final Report.

The Final Report has been filed, awarding Alcoa $1,629,872.40, and accordingly Alcoa moves for an order directing immediate disbursement to Alcoa (via check to its counsel) of, and confirming title in Alcoa to, the Registry Funds and directing New Midland to immediately pay Alcoa the difference between the total amount of the Registry Funds and the amount awarded to Alcoa by the Special Master.

Respectfully submitted,

Charles W. Van Beke, BPR #01335
Barbara D. Boulton, BPR #012753
Mark N. Foster, BPR #023626
WAGNER, MYERS & SANGER, P.C.
1801 First Tennessee Plaza
P.O. Box 1308
Knoxville, Tennessee 37901-1308
865/525-4600
865/291-0419 (Facsimile)
*Attorneys for Alcoa Defendants*

**I hereby certify that the within is a true
Copy of the original filed in this court.**

**Clerk & Master**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing document was served upon all counsel of record, via email and deposit into the U.S. Mail, first class, postage prepaid, on this 23rd day of September, 2005, addressed as follows:

Brian P. Flaherty, Esq.
Wolf, Block Schorr &
   Solis-Cohen LLP
1650 Arch Street, 22nd Floor
Philadelphia, Pennsylvania 19103-2097

John A. Lucas, Esq.
James S. Chase, Esq.
Hunton & Williams LLP
900 South Gay Street, Suite 2000
P.O. Box 951
Knoxville, Tennessee 37901-0951

David T. Black, Esq.
Jerry G. Cunningham, Esq.
Kizer & Black
329 Cates Street
Maryville, Tennessee 37801

And upon the Special Master, via email and hand delivery, this 23rd day of September, 2005, to the following address:

J. Michael Winchester, Esq.
Winchester, Sellers, Foster & Steele, P.C.
First Tennessee Plaza, Suite 1000
Knoxville, Tennessee 37929

_____
Mark N. Foster

I hereby certify that the within is a true
Copy of the original filed in this court.

Clerk & Master

```
 1                    TRANSCRIPT OF PROCEEDINGS

 2                         March 3, 2005

 3        IN THE CIRCUIT COURT FOR BLOUNT COUNTY, TENNESSEE

 4                        EQUITY DIVISION
       - - - - - - - - - - - - - - - - - -
 5   NEW MIDLAND PLAZA ASSOCIATES,         )
     A Tennessee General Partnership,      )
 6   MARTIN E. O'BOYLE, CATHERINE O'BOYLE,)
     SUCCESSOR TO JOHN E. O'BOYLE, and     )
 7   CATHERINE O'BOYLE as tenants by       )
     The Entireties, COMMERCE PARTNERSHIP  )
 8   No. 1147, a Florida General           )
     Partnership No. 1171, a               )
 9   Florida General Partnership,          )        No. E-18053
             Plaintiffs,                   )
10                                         )
                                           )
11   vs.                                   )
                                           )
12   FIRST UNION NATIONAL BANK, ALCOA      )
     CALDERWOOD, LLC (f/k/a COOLIDGE       )
13   SOMERSET ALCOA, LLC), DAVID FRAIMOW,  )
     MARSHALL ALLAN and FRED STAHL,        )
             Defendants.                   )
14   - - - - - - - - - - - - - - - - - - - - - - - - - - -
                    MOTION HEARING BEFORE
15                THE HONORABLE W. DALE YOUNG
     - - - - - - - - - - - - - - - - - - - - - - - - - - -
16   APPEARANCES:

17                 FOR THE PLAINTIFFS:

18                 DAVID T. BLACK, ESQUIRE
                   Kizer and Black
19                 29 Cates Street
                   Maryville, Tennessee  37801
20                 and
                   BRIAN FLAHERTY, ESQUIRE
21                 Wolf, Block, Schorr and Solis-Cohen
                   1650 Arch Street
22                 Philadelphia, Pennsylvania  19103

23

24                 GIBSON COURT REPORTING
                        865-546-7477
25
```

COPY

FILED
SEP 23 2005
JAMES A CARROLL
CLERK & MASTER

EXHIBIT
A

```
 1    APPEARANCES CONTINUED:

 2                    FOR THE DEFENDANT FIRST UNION BANK:

 3                    JOHN A. LUCAS, ESQUIRE
                      Hunton and Williams
 4                    Suite 2000, Riverview Tower
                      900 South Gay Street
 5                    Knoxville, Tennessee  37902

 6                    FOR THE DEFENDANT ALCOA CALDERWOOD, LLC,
                      MARSHALL ALLAN AND FRED STAHL:
 7
                      CHARLES VAN BEKE, ESQUIRE
 8                    MARK FOSTER, ESQUIRE
                      Wagner, Myers and Sanger
 9                    18th Floor, Plaza Tower
                      800 South Gay Street
10                    Knoxville, Tennessee  37902

11                    ALSO PRESENT:

12                    Martin O'Boyle
                      Bill Ring
13                    Kim Hoy
                      Special Master Michael Winchester

14

15

16

17

18

19

20

21

22

23

24
                         GIBSON COURT REPORTING
25                          865-546-7477
```

1               P R O C E E D I N G S

2

3                   (BE IT REMEMBERED, the above-entitled

4                   cause came on for hearing on the 3rd day

5                   of March, 2005, before The Honorable

6                   W. Dale Young, Judge of Said Court, when

7                   the following proceedings were had; to

8                   wit:)

9

10                      * * * * * * * * * *

11

12              THE COURT:  All right.  You Gentleman in the

13       New Midland case, let's talk.

14              MR. VAN BEKE:  One thing we want to report,

15       Judge, this morning we had a productive meeting with

16       Special Master Winchester.  He is not here, he was

17       going to come back but I am not sure his schedule

18       permitted.  He wanted us to request of the Court

19       that the -- that the due date for his final report

20       be extended and we went through a careful analysis

21       of what had to be done yet, and with Mr.

22       Winchester's concurrence we came up with an April

23       8th for his final report and it is currently due

24       March 14th, and so he asked us to respectfully

25       request that you give him permission to take until

1    April the 8th to submit a final report on the work

2    that he is doing.

3           THE COURT:  Thank you.

4           MR. FLAHERTY:  That's correct, Your Honor.

5    Good afternoon, Brian Flaherty from Philadelphia.

6           THE COURT:  Good to see you.

7           MR. FLAHERTY:  Thank you, Your Honor, happy to

8    be here.

9           We would agree with what Mr. Van Beke

10   reported, we had that discussion this morning and we

11   have no objection extending the period of time that

12   Mr. Van Beke has said for the Master to complete

13   his work.

14          THE COURT:  Okay.  Good.  Now, my best estimate

15   based on what the Gentleman in the case that we're

16   presently trying is that it is going to take at

17   least two more hours and that is without considering

18   the Doctor's deposition which I can take it under

19   advisement and read it some other time, but probably

20   two or two-and-a-half more hours before we could get

21   to even reach the New Midland case.  Could you

22   Gentleman be agreeable to continue it?  I have three

23   more days soon.

24          MR. VAN BEKE:  Let me suggest, Your Honor, if I

25   may, that why don't we continue it until after we

1     get the Special Master's final report and we can

2     wrap up a lot of things at that time when we have

3     his report, we can deal with the objections to his

4     interim report, we can deal at that time with the

5     objections to your December 15th order that you put

6     down that New Midland has filed some objection to,

7     we can do an awful lot if we could schedule, you

8     know, everything on one day and just roll through

9     and get it over with.

10          MR. FLAHERTY:  Well, Your Honor, the difficulty

11     with that is, and I don't want to get into the

12     merits here, but this is something that we think

13     requires emergency treatment, we have a commitment

14     ready, willing and able to close on an amount

15     sufficient to pay the funds we have talked about,

16     and frankly, it is problematic to continue it that

17     way for us.  So, of course, we understand the

18     Court's plight this afternoon and, of course, we

19     have to work with that, but we could either stay

20     around this afternoon and try to address it.  I

21     don't think this is an evidentiary hearing today as

22     much as it is really just an argument on the issues,

23     and perhaps we could do it that way or if the Court

24     can't do that, we would request that you put it on

25     for as short a period of time as you could so you

1   hear us before we get into this prolonged

2   continuance.  That's really our concern, Your Honor,

3   this does require, we believe, a quick resolution.

4        THE COURT:  Today is the 3rd, and I have March

5   the 10th, March 16th and March 17th when I can

6   devote considerable time to it.

7        MR. FLAHERTY:  May I take a couple of minutes

8   and consult with my client, Your Honor.

9        MR. VAN BEKE:  Don't forget we have scheduled

10  depositions for the 17th and 18th.

11       MR. FLAHERTY:  I will remember that.  Sure.

12  Thank you.

13       (Brief pause.)

14       MR. BLACK:  Your Honor, here is our dilemma.

15  We have been trying since December 8th to pay off

16  the loan.  We have the wherewithal to pay the loan,

17  they won't take the proceeds.  Again, not getting

18  into the merits.

19       MR. VAN BEKE:  But we are, aren't we?

20       MR. BLACK:  We are still trying to establish an

21  amount, we know that amount now does not exceed $6.4

22  million.  We're prepared to pay that into Court,

23  close our loan, do whatever they deem necessary for

24  them to feel secure.  But right now, the amount owed

25  is 6.4 they say.  And after Your Honor, when we were

1       here earlier, when they extended for 30 days they

2       now say they are collecting 14 percent interest, the

3       default rate of interest, and that is not right.

4       And it is not right that we can't pay them when they

5       are insisting on being paid, and we pay it into

6       Court and everybody is protected.  They can move to

7       withdraw it or do whatever and we can have that

8       discussion at that time.  But the problem with, as

9       Your Honor knows, with commercial loans is

10      circumstances change, interest rates go up, you have

11      to get new subordination agreements, things expire,

12      and the banks make you start all over again.  And

13      that is maybe what they hope, I don't know, but that

14      has been our theory all along anyway.  But that is

15      where we are, we do need emergency relief and we are

16      prepared to pay for it.

17              THE COURT:  Okay.  Your 6.4 million does not

18      include their claim for attorneys' fees.

19              MR. BLACK:  6.4 includes the attorney fees that

20      the Master, the maximum amount of attorneys' fees

21      that the Master has determined to this point.  Yes,

22      sir, it does include that.  The Master has

23      disallowed a substantial number of fees and when we

24      get into the arguments we can explain to Your Honor

25      why that they were excessive and --

1    MR. VAN BEKE:  Now, we're getting into arguing

2    the whole motion.  It is not acceptable to us to

3    have them ask the Court to order us to release the

4    lien and not get a penny, it is just not acceptable

5    to us and their deposit into Court doesn't give us

6    any money.  This is going to be an hour or two hour

7    argument when we do this.

8         Now, let me remind the Court that we have

9    stayed our hand.  We have not done anything to

10   exercise any of the remedies that we have, remember

11   I promised you we would not do anything 30 days from

12   the way back when.  Not only did we not do when we

13   have voluntarily forborne, if that is the word,

14   from doing anything.  And we're willing to do that

15   until Special Master Winchester gives his final

16   report so then we all know exactly what is going to

17   be due.

18        THE COURT:  How much of the 6.5 million would

19   it take to satisfy your people to be comfortable?

20        MR. VAN BEKE:  Let me say first, Judge, the 6.5

21   may not be the entire amount, that is the -- Special

22   Master Winchester has not dealt with interest on

23   attorneys' fees he has not dealt with default

24   interest on the principal and interest.  Plus there

25   is the point that objections, both of us have filed

objections to his first report and so there may be
more due. Furthermore, as he stated this morning,
attorneys' fees that we can claim continue to run,
this whole procedure today, for instance, this whole
thing is going to continue to run and we are not
being secured for any of these future fees.

MR. BLACK: Why don't we put in an extra
$100,000, for that, Your Honor. The is how
important this is to us. The amount is 6.3 at this
point. They have acknowledged that one of the law
firms in New York has waived their fees eventhough
they tried to claim it, that is another
100,000-plus, and delay is critical for our loan
commitment. And they talk about equity and doing
equity, we are here to do equity, we are here to pay
this loan despite all of the accusations and so
forth. This claim for attorneys' fees was
exaggerated by at least 100 percent and there was a
$94,000 conversion claim, I mean, we could go on and
on and on. But there is no reason that it seems to
me why we can't pay what the amount is into Court
and secure our financing and go forward and
determine then what the amount is.

MR. FLAHERTY: Your Honor, if I could just add
one more idea. Your Honor asked a question of Mr.

1    Van Beke, which he hasn't answered yet, but I want

2    to add one more thought in that regard; how much

3    would it take?  We would be amenable to that,

4    frankly, we would be amenable to paying them some

5    amount of money provided, with one proviso, is that

6    we have some method of having security go the other

7    way.  That is to say, we'll give them some

8    substantial portion of the 6.4, some of it to the

9    Court, some of this to them as long as since they

10   are a single asset entity, they don't really have

11   any assets and they are going to use this money to

12   pay back their lender, there is some method and we

13   would be very creative and open to make sure that it

14   the number is excessive we can get it back.  We are

15   willing to work with this.  We want to do the

16   equitable thing.  We want to see them fully secured

17   for every penny they might get and the time is of

18   the essence to us, Your Honor.  Thank you.

19        MR. VAN BEKE:  Every penny we might get goes up

20   to $8 million.  But besides that --

21        MR. FLAHERTY:  If I could just explain the one

22   point, please, they came into the Court on January

23   14th demanding to have this issue decided by Mr.

24   Winchester.  Now, they got that.  They got the

25   procedure they wanted.  They asked Mr. Winchester to

1    not take any evidence but to decide the first issue

2    as a threshold basis of whether or not the fees were

3    in concept payable.  Mr. Winchester has decided that

4    half the fees, approximately 1.5 million of the 3

5    million demand on January 14 are not collectible.

6    And, now, what we are hearing, this is the problem,

7    now we're hearing Mr. Van Beke's first suggestion

8    was today, well, let's wait until this is all over.

9    But now he's saying to you, if you listen carefully,

10   that even when it's all over, when we get to the end

11   of Mr. Winchester's report, which we already know

12   only includes 1.5, then he is going to start again

13   and say is really 3, we have an appeal to go back up

14   again.  The problem is, Your Honor, is this is never

15   going to end in a timely way because they want to

16   now go back having asked Mr. Winchester to use the

17   procedure he used and open it again two months from

18   now when you get Mr. Winchester's final report.

19        We want to end it now, fully secure them for

20   all the money they possibly can get under the

21   control of Your Honor.  That is our suggestion.

22        MR. VAN BEKE:  We are not secured at all.

23   They want this lawsuit to go on for years yet to get

24   this money back again out of the registry of the

25   Court.  In the meantime, we have lenders to pay too.

1    We have no source of income now that they have

2    stopped paying us, and then they want us to continue

3    to fight that lawsuit without any security for

4    future attorneys' fees by putting it into the

5    registry of the Court; that is not acceptable.  And

6    the law in Tennessee is so absolutely incredibly

7    clear, black letter law, that they have to make a

8    tender to us of the full amount due, they haven't

9    done that.  They haven't made a tender of us of

10   anything much less the full amount due.

11           MR. FLAHERTY:  Your Honor, let me say this, we

12   will pay the minute the loan closes the full amount

13   that Coolidge owes to his lender as long as we get

14   assurance that if we are right, in some method that

15   Coolidge will refund to us the amount we are right

16   for.  I will make that commitment today.  We will

17   give them cash dollars the day of the closing in an

18   amount sufficient to pay their lender.

19           MR. VAN BEKE:  That is not acceptable.  What

20   the whole thing revolves around is this note had a

21   setoff provision in it, that whatever they want in

22   this lawsuit, the note said if they get a final

23   judgment in this case they can offset against what

24   they owe.  That note is over.  It has matured, it is

25   over.  The setoff is gone.  Not only because of the

1   terms of the note, the setoff left on January 20th

2   of 2005. But they don't have a final judgment what

3   they want to do and particularly in view of your

4   December 15th order disposed of every substantive

5   issue raised in their complaint, every substantive

6   issue in their complaint was resolved in your

7   December 15th order. They have no prospects for a

8   setoff. But what they are trying to do now is

9   protect that right or to continue to hold us hostage

10  or the money due us hostage while they appeal Lord

11  knows for how many years; that is not permitted

12  under the note. That note has matured. It is over.

13  We are due our payment. We were due on January

14  20th, but as a courtesy to the Court I would agree

15  that we forebear to let Mr. Winchester's process to

16  go forward. I continue to do that. But we are

17  not -- we can never agree to let the money that is

18  due us held hostage on the hope that someday they

19  might finish the appellate process.

20          MR. BLACK: Three things, Your Honor, number

21  one, we have paid the interest through February

22  28th, Mr. Van Beke maybe was not aware of that.

23  Number two, we are prepared and whatever formal sort

24  of tender it takes and, of course, Your Honor knows

25  you don't have to tender if they are not going to

1    accept it, and they -- they can't even tell us the

2    true amount due, we know it is not more than $6.4

3    million, we know that at this point that it is not

4    more than $6.4 million.  And, finally, it creates

5    irreparable harm potentially to us because of the

6    financing and the financing commitment and that is

7    why we keep coming back.  We hear no alternative, we

8    will do this and this other than pay $8 million and

9    that is -- that is unjust and that is why we need

10   immediate relief.

11        THE COURT:  You're prepared to pay into the

12   registry of the Court how much?

13        MR. BLACK:  $6.4 million, the total max due

14   under the Master's report is 6.3 plus change.  And I

15   think of that 6.3 Charlie will acknowledge there is

16   100-plus that is deducted.

17        THE COURT:  Would your client, Mr. Van Beke,

18   accept 6.4 million in complete settlement in all the

19   claims of this lawsuit?

20        MR. VAN BEKE:  You mean dismissal of the case?

21        THE COURT:  Yes.

22        MR. VAN BEKE:  Yes.

23        THE COURT:  Will your client agree that upon

24   the payment of the 6.4 million the lawsuit will not

25   proceed or be appealed?

1          MR. BLACK:  We can't agree to that for a couple

2     of reasons, Your Honor, we don't owe the full 6.4.

3     We are still discussing attorney fees and there is a

4     number of them that we think will be successfully

5     challenged, that is why we want to pay that amount

6     at least into the Court.  The principal and interest

7     is 4., they originally claim 5.3-something, the

8     actual principal and interest is now down to 4.9.

9          THE COURT:  How much in attorneys' fees do you

10    think of this amount is questionable?

11         MR. BLACK:  We think it is all questionable for

12    several reasons one of which is that they have

13    exaggerated their claim and they should by barred

14    from recovering any attorney's fee.  But the Master

15    has determined that they are entitled to review of

16    three different categories of attorneys' fees and

17    those three categories includes Mr. Van Beke's fees

18    in this litigation, some fees in the Bankruptcy

19    Court litigation, some of which we find are

20    duplicative, some of which we find in one case have

21    been waived.

22         MR. VAN BEKE:  This are issues before Special

23    Master Winchester.

24         MR. BLACK:  But what we are willing to do, Your

25    Honor, we are willing to secure those attorney fees

1    by paying it into court.

2         THE COURT:  Of the 6.4 million, what amount do

3    you say is going to be questioned?

4         MR. BLACK:  Well, principal and interest is

5    established at 4.9 approximately.  We have all

6    concurred I think at this point with the 4.9

7    million, that pays off his loan and that gives over

8    and above what the loan is.

9         THE COURT:  Mr. Van Beke, you say the

10   attorneys' fees ultimately will exceed the amount

11   included in the 6.4 million?

12        MR. VAN BEKE:  If the case continues on and

13   attorneys' fees are accumulating in an

14   extra-ordinary amount because the amount of

15   litigation that is going on, The 4.9 -- by the way,

16   David is right, the 4.9 that Special Master

17   Winchester found, I can't remember the exact dollar,

18   but 4.9 give or take a few bucks, was the principal

19   and interest due as of January 20th of 2005.  Now,

20   we think there is default interest due from January

21   20th until whenever they pay us on that.  And I

22   thought default interest was nine and a quarter, I

23   am not sure.

24        MR. BLACK:  No, I think the note is 14 percent.

25        THE COURT:  So, there is no way your clients

1    can accept a portion of the funds and leave the

2    balance of it for us to ferret out at some other

3    time if they will dismiss the lawsuit.

4        MR. VAN BEKE: No, that is not what I said. If

5    they will dismiss -- oh, if they will dismiss the

6    lawsuit, the 6.4, we'll go home; it is over and done

7    with.

8        MR. BLACK: I'm sure.

9        THE COURT: But Mr. Black wants to contest some

10   portion of the attorneys' fees. What I am saying is

11   that why don't you accept some good portion and

12   let's escrow the rest of it and argue about it at

13   some other time if we can all agree that the lawsuit

14   is going to go away and there won't be any

15   possibility of a setoff.

16       MR. VAN BEKE: If the only thing left to fight

17   over is the quantum of attorneys' fees, I would

18   agree with you Judge, that is if they pay the $4.9

19   million directly to us, they escrow the balance of

20   the 6.4 here as to fight over attorneys' fees but

21   that the case would be dismissed except for that one

22   issue, we are in agreement. We are agreeable to

23   that.

24       THE COURT: Can you, Mr. Black, can your client

25   do that?

1    MR. BLACK: We would certainly have to talk to

2    him, Your Honor.

3        MR. VAN BEKE: He's here.

4        MR. FLAHERTY: Your Honor, may I suggest that

5    we ask for the Court to continue with the proceeding

6    now, if you can, and we talk about this and report

7    back this afternoon?

8        THE COURT: That will be fine. Why don't you

9    do that.

10       MR. VAN BEKE: Thank you, Judge.

11       (Whereupon, the lunch recess was had.)

12       MR. VAN BEKE: Your Honor, I am happy to report

13   that on behalf of at least the Alcoa Defendants that

14   I have talked to my clients and they agreed with my

15   representation to the Court that your proposal would

16   be acceptable to them.

17       MR. FLAHERTY: Well, we have had discussions

18   outside to try to see if we could make progress on a

19   resolution and they have not been successful; I can

20   report that to the Court.

21       But I would like to reiterate our request that

22   we would do the following, Your Honor, by way of

23   motion today: Number one, we would agree to pay

24   them immediately out of the proceeds of the loan

25   that we take upon release of the lien $4.9 million.

1      We would agree to pay the 1.4 million, whatever the

2      delta is between with the number recommended by Mr.

3      Winchester -- excuse me -- whatever the maximum

4      number that Mr. Winchester might argue and we would

5      pay that to the Court immediately.  And on April 8

6      the day that Mr. Winchester makes his final report

7      under the current schedule, we would be agreeable to

8      have that released from the Court, that million

9      four, if in fact that is the amount of money that

10     Mr. Winchester deems payable, release it directly to

11     Alcoa and that way the matter would be resolved on

12     April 8 by the payment in full of every dollar that

13     Mr. Winchester might determine is due under the

14     terms of the note and the Deed of Trust.

15          That is our position; they get 4.9 next week or

16     whenever the loan can close, the difference between

17     the 4.9 and 6.4 comes to the Court immediately

18     straight from our lender.  And on April 8, the day

19     Mr. Winchester makes his final recommendation, we

20     could be here the next day on April 9th and if the

21     Court approves it and we would not oppose it,

22     whatever Mr. Winchester says of the million five,

23     they get it immediately and we get the difference

24     back.

25          MR. VAN BEKE:  And is the case over?

1          MR. FLAHERTY:  Mr. Winchester's report will

2     have been adopted and we would have gotten the

3     judgment from whom you said you wanted, and we would

4     pay the note.

5          MR. VAN BEKE:  Will the case be dismissed?

6          MR. FLAHERTY:  No, the case would not be

7     dismissed.  But you are fully protected and your

8     rights pursuant to the note and Deed of Trust are

9     absolutely fully paid in full with cash dollars by

10     April 9.

11          MR. VAN BEKE:  We would want security for the

12     ongoing attorneys' fees that we continue to defend

13     against the setoff.

14          MR. FLAHERTY:  At that point the note and the

15     Deed of Trust are paid.  Of course, Mr. Winchester

16     will have decided by then, Your Honor, our scenario

17     is this again:  We will continue with Mr.

18     Winchester, he will have the hearings he's going to

19     have between now and April 8, he will decide what he

20     is going to decide.  He will recommend to the Court

21     on April 8, we will be here the next day or in

22     keeping with the Court's schedule, we will say that

23     is okay with us and it will be paid.

24          Mr. Van Beke's client will have achieved its

25     purposes, it will have collected in full every

single penny due to it under the note and we are
done.  The note will have been satisfied, the Deed
of Trust will have been satisfied and we will be
finished.

There will be no more litigation about the
terms of note.  It will be paid off in full per the
instructions and per the recommendations of Mr.
Winchester because it is exactly what New Midland
wanted when it came here on January 14; they will
have achieved it and everybody will be protected
from every single dollar possibly due and payable on
April 9.

THE COURT:  Mr. Van Beke.

MR. VAN BEKE:  And the problem is that the
litigation is going to continue on and on and on as
we fight over the terms of the note, that is whether
or not there's a setoff.  And, you know, the fact of
the matter right now, there just isn't a setoff as
this Court has already said, all our substantive
claims are gone but we are still going to have to
fight.  And what Mr. Winchester has talked about in
our -- not today, but in another meeting, is that
the amount payable, the amount of the setoff is, in
fact, protecting the lien that we have on the
property.  They want to be able to cap their

1    liability now and keep growing ours.  We want

2    security against that and I think we're entitled to

3    that under the note.

4        MR. FLAHERTY:  If I may, Your Honor, here is

5    what we proposing so it is clear and so Mr. Van Beke

6    understands it:  On April 9 they will be paid every

7    single dollar of the principal that is due.  There

8    will be no setoff.  We are not challenging that

9    anymore.  On April 9 it will be paid, finished.

10   Attorneys' fees, whatever Mr. Winchester finds is

11   due on April 8 in his final report, we will pay on

12   April 9 period.  Mr. Winchester's goal on January

13   14th, he said was he wants to get paid in full as of

14   January 20th.  It didn't happen January 20th because

15   we were involved in this process on April 8, this

16   process will be over and every single dollar due to

17   him under the note and Deed of Trust will be paid,

18   their obligations will be extinguished.  Period.

19       THE COURT:  And the Plaintiff reserves its

20   right to pursue any remaining causes of action just

21   disregarding the setoff?

22       MR. FLAHERTY:  Absolutely, Your Honor.  My

23   involvement in this case will be over because as you

24   recall my appearance is limited to this note, a

25   resolution of how much is due under it, and either

1  settling or paying it off.  And we will have done

2  that.  We will be finished.  Every single obligation

3  owed to them pursuant to the note will have been

4  finished and between now and then per our proposal

5  they will be absolutely fully secured.

6  MR. VAN BEKE:  Let me ask, if Mr. Winchester

7  finds that we are entitled to more than the amount

8  of the deposit, would you pay that full amount as of

9  that time?

10  MR. FLAHERTY:  No, we would not, and we don't

11  propose to put it in the Court.  Mr. Van Beke showed

12  up on behalf of his client January 14th and he

13  requested that we send that matter to Mr.

14  Winchester, we did, the Court accepted that, we are

15  there, we are going through this whole process.  He

16  then had a very specific suggestion that Mr.

17  Winchester adopted, and it was we are going to

18  decide first whether or not the attorneys' fees are

19  due in concept under these various categories, their

20  suggestion, their procedure; adopted.  Mr.

21  Winchester decided that.

22  MR. VAN BEKE:  You misunderstand my proposal.

23  MR. FLAHERTY:  Let me finish.  I think I do.

24  But let me finish.  If Mr. Winchester comes back

25  under their proposal he adopted with him and says

1         that 1.5 is due rather than the 3 million they are

2         saying is due, it is not due, this is the procedure

3         that they suggested, it has been adopted, and we

4         want to live with it and we are ready to do it.

5         Now, they're changing their tune, well, no, maybe

6         there is more due after all.  Now, we see what is

7         going on.

8             We want this case over.  We want to pay in full

9         every single amount due under the Court and we

10        want to protect them while we're do the refinancing

11        we had in place until this whole unfortunate thing

12        started in the middle of December.

13            MR. VAN BEKE:  What my point was, Your Honor,

14        was not to resurrect the items that Mr. Winchester

15        has already said that we are not entitled to.

16            MR. FLAHERTY:  Okay.  That is what I was

17        addressing, then I misunderstood if that is what you

18        were saying.

19            MR. VAN BEKE:  The only thing I was saying was

20        that he is going to make some determinations that,

21        for instance, if they deposit 1.5 I think.

22            MR. FLAHERTY:  The numbers are in the Court's

23        submission, approximately.

24            MR. VAN BEKE:  Whatever they are.  And if Mr.

25        Winchester says it 1.5 plus 75,000 or 100,000 or

1     30,000 that they will obligate themselves to pay

2     whatever Winchester says.

3          MR. FLAHERTY: Yes, Your Honor. Yes. And here

4     is why. The 1.4 figure that is in our papers from

5     earlier this week or late last week, I forget when

6     they are filed, included 4.9 of the principal and

7     change, and 1.4-something which is the maximum

8     amount due. We already know per the -- Mr. Van

9     Beke, listen to make sure we agree on this -- we

10    already know that approximately $100,000 of the fees

11    allegedly payable to Olshan-Grundman firm that were

12    included in the 1.4 figure in our motion, they have

13    waived. So we are down to, we have that $100,000

14    cushion which we would pay into the Court. So then

15    if there is any growth in the numbers they are

16    claiming above the 1.3 now-something that they are

17    claiming back up to the point before they withdrew

18    their Olshan-Grundman claim, that gives us a

19    $100,000 cushion they being protected. And I will

20    go even further, Your Honor, if that is not enough

21    and Mr. Winchester decides there is another $5,000

22    due, we'll pay it. All I'm saying is that we will

23    pay this into the Court now, and this is a totally

24    reasonable sum to secure them until April 8, and

25    then were done.

1    MR. VAN BEKE: When is the closing scheduled

2    for?

3    MR. FLAHERTY: It hasn't been able to be closed

4    yet because we need the release from the Court

5    today. But I am informed that if we can get this

6    resolved today and get the release of lien today, my

7    partner, Henry Miller, my real estate partner, is

8    working with Mr. O'Boyle and with the lender and I

9    think this would be closed in approximately less

10   than a week.

11   MR. O'BOYLE: Approximately a week.

12   MR. FLAHERTY: Approximately a week.

13   MR. VAN BEKE: I cannot agree to give a

14   release today. If they want to give us a closing

15   date and that we attend closing, you know, that is

16   something else, so that we can get paid. But I

17   don't want -- I am not going to give a release, I

18   can't possibly give a release on the hopes -- on

19   their hope that they might be able to cut a deal

20   with another lender.

21   THE COURT: Why do you need to attend the

22   closing?

23   MR. VAN BEKE: I just -- my only point was

24   that I can't gave a release now on the promise that

25   maybe they might.

1    THE COURT:  I understand that, but I --

2    MR. VAN BEKE:  I don't have to attend the

3    closing.

4    THE COURT:  You give a release when the deal is

5    fulfilled.

6    MR. VAN BEKE:  Pardon?

7    THE COURT:  When the deal is fulfilled, if we

8    are going to do a 4.9 million to you and 1.4 million

9    into the registry of the Court, that is when you

10   give a release.

11   MR. VAN BEKE:  That's right.

12   MR. FLAHERTY:  Your Honor, I'm not a real

13   estate lawyer as you know, I'm a litigator.  I don't

14   know how it works in Tennessee, but I do know enough

15   to say that in Pennsylvania typically when you

16   release the lien of mortgage holder or creditor to

17   somebody what happens is is that the satisfaction

18   piece, if that is what it is called in Tennessee, is

19   delivered to the title company with instructions not

20   to release it until the funds are distributed as per

21   the wishes of the security holder.  So if that,

22   again, I don't know how it works, it would work

23   between I'm sure somebody in my office, Mr. Miller

24   of one of his associates, and somebody perhaps in

25   Mr. Van Beke's office, or I don't know, I guess you

1    probably handle the real estate transactions, and

2    they would work it out such that in the everyday

3    course when a lender is releasing his lien he is

4    adequately protected to make sure the money goes

5    where it is supposed to go.

6          THE COURT:  I am with Mr. Van Beke on this one;

7    until I see money, I don't sign a release.

8          MR. FLAHERTY:  Believe me, we can work this

9    part out.

10         MR. BLACK:  What I suggest is the funds can be

11   wired here, Mr. Van Beke can come over and pick up

12   the funds, give us the release and just like --

13         THE COURT:  If that is going to be the

14   agreement.

15         MR. VAN BEKE:  I have only one other thing

16   then, Judge, the amount determined was as of January

17   20 of 2005, we are going to have two months worth of

18   interest that we are due on top of whatever Mr.

19   Winchester found, and we would want interest, we are

20   entitled through the date of receipt.

21         MR. FLAHERTY:  I'll say this, Your Honor, like

22   back a few minutes ago, if Mr. Winchester finds

23   there is interest due, then there will be interest

24   due.  We have paid interest, I believe, I think

25   there is some impression that interest hasn't been

1   paid and some has been. But if it hasn't, it will

2   be paid, we are not trying to get out of our

3   obligation to pay the interest. There is no

4   question about that. And it will be paid timely at

5   the closing if it is due then.

6           MR. VAN BEKE: May I consult for a moment?

7           THE COURT: Sure.

8           (Brief pause.)

9           MR. VAN BEKE: I don't have the authority from

10  my clients to accept this. I mean, I have got

11  acceptance to the proposal that the Court had made

12  earlier today, so I will obviously need to consult

13  with them. I mean, this is too big a deal for a

14  poor old Tennessee lawyer to deal with, Judge.

15          MR. FLAHERTY: Your Honor, I understand that.

16  And I certainly have no objection to asking that Mr.

17  Van Beke have an opportunity to talk with his client

18  and see whether they agree.

19          So it is clear with respect to Mr. Van Beke and

20  the Court, we believe that this is appropriate

21  relief to enter as a matter of appropriate relief

22  whether or not they agree, if they agree it is

23  better. And the reason we believe that is, Your

24  Honor, the proposal I am making now pays them off

25  totally, it fully protects them and they are fully

| | |
|---|---|
| 1 | paid for every dollar that they are owed. So while |
| 2 | I certainly don't object, like I said, to Mr. Van |
| 3 | Beke talking to his client and if they agree, that |
| 4 | is great, wonderful, and it would be easier. I want |
| 5 | to make sure that the Court and Mr. Van Beke |
| 6 | understand that we believe if they don't agree we |
| 7 | would still like the Court to entertain our request |
| 8 | to grant our relief. That is, pay off the full |
| 9 | amount 4.9 directly to them on closing next week in |
| 10 | accordance to some method to make sure the Court and |
| 11 | Mr. Van Beke's client gets the money before there is |
| 12 | any release. |
| 13 | Two, 1.4 held by the Court and April 9 |
| 14 | disbursed as the Court sees fit after Mr. |
| 15 | Winchester's report comes in. That protects |
| 16 | everybody fully, satisfies them, stops the interest |
| 17 | running, stops the fight, and the note is done. |
| 18 | MR. VAN BEKE: Well, it doesn't stop the |
| 19 | fighting obviously because they want to continue to |
| 20 | litigate. |
| 21 | MR. FLAHERTY: It stops the fighting on the |
| 22 | note. The note is due on January 20th. We are |
| 23 | here -- that is the dispute we are here before. We |
| 24 | are not here today on the litigation generally. We |
| 25 | tried, respectfully, to say let's put off the note |

1   until that is finally resolved but, you know what,

2   we can't resolve that today so let's settle the

3   note, get the note done and finished with everybody

4   protected, and whatever happens happens in the rest

5   of the litigation. The rest of litigation is not

6   being discussed here today, that is not what we're

7   doing.

8   THE COURT: It sounds like a fair resolution to

9   me. If you would, Mr. Van Beke, check with your

10  clients and I will finish up on the case that I'm

11  trying.

12  MR. VAN BEKE: Your Honor, would it be

13  acceptable if I could use a telephone, my battery is

14  dead, and oops, I should have it turned off in here

15  anyway. If I could use a phone somewhere so I could

16  talk to my client.

17  THE COURT: We have a phone that we can plug in

18  back in the jury room if you would prefer.

19  MR. VAN BEKE: Can I make a long-distance call?

20  THE COURT: No, my secretary will have to do

21  that for you. Go in my office and ask her to place

22  a long-distance call for you and you can take it at

23  my conference table in there.

24  MR. VAN BEKE: Back in the conference room?

25  THE COURT: No, in my office.

1          MR. FLAHERTY:  We'll be out in the corridor.

2    Thank you.

3          (Whereupon, a short break was.)

4          THE COURT:  Good afternoon, Your Honor.

5          I think we have a method of resolving the

6    motion that has been filed that was on for today.

7    And here is what it is:  The parties have agreed

8    that they will cooperate with each other in

9    connection with the refinancing of the currently

10   outstanding loan to Midland -- to Alcoa from the

11   Midland.  We anticipate the closing to take place

12   sometime next week.  The parties will cooperate to

13   release the lien of any existing Deed of Trust

14   running to Alcoa as well as I think some ancillary

15   finance -- ancillary security interest of JDI who is

16   the lender of Alcoa on the property as well.  And

17   they will work together to accomplish that and will

18   be in touch with the Court to see if we need any

19   assistance from the Court in that regard, but we

20   really won't.  The money will be paid, $4,890,647.67

21   will be paid to Alcoa, let me repeat that,

22   $4,890,647.67 will be paid to Alcoa directly.  That

23   is the amount as found in Master Winchester's report

24   as to the principal due on the note on January 20,

25   2005.

1    In addition, out of the proceeds of the

2    refinancing, the sum of $1,540,544 will be paid to

3    the registry of the Court and we will be in the

4    touch with the Court to figure out how to accomplish

5    that precisely, and that will be held by the Court

6    subject to the Court's disposal following the

7    receipt of the report of Master Winchester currently

8    planned to be filed by Master Winchester on April 8

9    in accordance with the new schedule agreed upon

10   today.

11        At that point neither party will object to the

12   report of Master Winchester, he will in effect

13   become kind of a binding arbitrator, if you will,

14   and nobody will object to his report.  And out of

15   that 1,540,544 will be paid any amounts that he

16   deems due to New Midland -- excuse me, to Alcoa from

17   New Midland.

18        Now, upon the payment to Alcoa of the 4.8

19   million number and the receipt by this Court of the

20   million-five number the note will be deemed

21   satisfied and made as will the Deed of Trust and

22   then the payment will be paid out of the Court in

23   accordance with the procedure I just described.

24   This is done for the purpose of paying off the

25   satisfying the terms of the note.  It is done by the

1    agreement of the parties and it does not resolve

2    anything other than the payment of the note in

3    accordance with the agreement of the parties.  It

4    does not have any effect upon the litigation that is

5    before the Court, that is an entirely separate

6    matter, not the subject of the motion and not the

7    subject of this agreement.

8        And I think that concludes it, does it not,

9    Mr. Van Beke?

10        MR. VAN BEKE:  Only to emphasize insofar as

11    the note is concerned and any claim for setoff under

12    the note or any claim for attorneys' fees that we

13    might have under the note, there will be no appeals

14    and it is resolved.

15        MR. FLAHERTY:  Yes, the note -- well, let me

16    say it is resolved, the "it" that is resolved is

17    only the payment of the note; that is what is

18    resolved.  And there is nothing else resolved so

19    that the claims that are made in the lawsuit by New

20    Midland and the others Plaintiffs, such as they are,

21    and I'm not going to try to describe them, I'm just

22    saying they are what they are, those claims are

23    unaffected by this resolution.  This resolution is

24    only of the amount due under the note pursuant to

25    its terms.  Period.  That is it.

1        MR. VAN BEKE:  Which would include the setoffs?

2        MR. FLAHERTY:  No.  It includes the setoff to

3    the degree that the setoff might have affected the

4    amount due under the note; yes.  My point is, we're

5    not going to come back and say we paid you too much

6    under the note, you have to refund us.  That we

7    can't do.  The amount that is due under the note is

8    paid under the note and finished, the note will be

9    distinguished under the Deed of Trust.  But there

10    are other obligations that are being litigated right

11    now in this Court and this has no affect on them

12    whatsoever.  This is simply to pay the outstanding

13    obligation consisting of the amended loan documents

14    that have been discussed over the last several

15    months in this Court.  That is it.  There is no

16    other resolution before the Court.

17        THE COURT:  Gentleman, while you're talking

18    somebody needs to decide who gets the interest on

19    the amount of money that the Clerk and Master is

20    going to invest, as little as it may be, it could be

21    several hundred or several thousand dollars, who

22    gets it?

23        MR. FLAHERTY:  Your Honor, I think the interest

24    will be credited and held by the registry of the

25    Court and then when we get Special Master

1    Winchester's report whatever amount comes out of

2    that pot as increased by whatever -- including

3    whatever increase there is on account of the

4    interest it has earned gets distributed to either on

5    the one hand either Alcoa or back to Midland

6    depending on the resolution of Master Winchester.

7    So in the meantime between now and whenever the

8    closing is and April 9 or 10, whenever the final

9    distribution is made as the immediate aftermath of

10   Winchester's report, that amount of money, that

11   amount of interest just gets credited back to the

12   Court.  Nobody will be paid that, in other words,

13   other than the Court.

14         And Mr. O'Boyle just asked me if I said

15   something, I think I did, but I want to be clear

16   about it and that is that by the payment next week

17   of the two amounts, the amount due to Alcoa and the

18   amount that is going to be paid to the Court, that

19   will extinguish the obligations due under the note

20   with the one exception being any amount determined

21   by Master Winchester; the payment to the Court will

22   extinguish the obligation of the note subject to the

23   thing with Master Winchester.

24         MR. VAN BEKE:  And one other thing is that New

25   Midland has agreed that if the amount determined by

1  Master Winchester exceeds the amount that is in the

2  registry of the Court that New Midland will make up

3  that amount.

4  MR. FLAHERTY: That's true. Again, with just

5  one proviso so that it is crystal clear, that there

6  will be no appeal just as there will be no appeal by

7  New Midland of Master Winchester's report, there is

8  not going to be any appeal of it by Alcoa either and

9  I am referring specifically there to the findings

10  that has already been made by Master Winchester,

11  that the categories that he has ruled ineligible for

12  compensation among the attorneys' fees originally

13  sought are not going to be appealed from, that is

14  approximately a million-five in legal fees that is

15  determined not payable, there will be no appeal of

16  that by Alcoa.

17  MR. VAN BEKE: That is the First Union and

18  Fraimow fees that we requested?

19  MR. FLAHERTY: That is correct.

20  MR. VAN BEKE: We agree. And that the

21  objections that New Midland has already filed will

22  be deemed withdrawn.

23  MR. FLAHERTY: Correct.

24  And, now, Your Honor I think that does conclude

25  it. With the Court's pleasure we wanted to put this

1    on the record, we can submit an order but, frankly,

2    I think this is our agreement if it is okay with the

3    Court, we'll just proceed on this basis and you will

4    be hearing from us or somebody will be to determine

5    the method by which to accomplish this with the

6    Court's registry.

7          THE COURT:  Is that okay, Mr. Van Beke?

8          MR. VAN BEKE:  Yes, I am familiar with all

9    that is going on and trying to prepare an order will

10   be interminable.

11         MR. FLAHERTY:  I think we better spend our time

12   accomplishing the closing.

13         MR. BLACK:  One clarification, Charlie, and I'm

14   sure you didn't mean to say it, you said the

15   objections will be withdrawn.  But, of course, there

16   are objections with regard to the attorney fees to

17   the Master, I assume you didn't mean that was

18   withdrawn; you meant to this Court?

19         MR. VAN BEKE:  Right, the New Midland's

20   objection to Winchester's report so far are deemed

21   withdrawn.

22         MR. BLACK:  Right.  But not the objection to the

23   attorneys' fees that are pending before him.

24         MR. FLAHERTY:  Well, again, I --

25         MR. VAN BEKE:  The Winchester process goes

1    forward and there is no appeal or objections to

2    whatever he rules on April 8th.

3          MR. FLAHERTY:  He will make the determination

4    in accordance with the procedure we agreed upon

5    today and such other procedures that he determines

6    from time to time in accordance to what we

7    talked about today with him, whatever outcome he

8    comes out with on account of the approximately

9    million-five that remains that is the result you're

10   not going to appeal and we're not going to appeal.

11         MR. VAN BEKE:  Mr. Flaherty and I are in

12   perfect agreement and I think, Judge, you ought to

13   tell the rest of the folks to back-off.

14         THE COURT:  Keep their noses out of it.

15         Okay.  Let's have the record typed up and make

16   it apart of the record in the case just so we will

17   know where we're going.

18         MR. BLACK:  It's been a pleasure dealing with

19   these people, Your Honor.

20         MR. FLAHERTY:  Your Honor, I just have to ask

21   the Court's indulgence for one moment.

22         THE COURT:  Sure.

23         MR. VAN BEKE:  Judge, I asked you to tell them

24   to butt-out.

25         THE COURT:  You did.  I didn't say it

1    forcefully enough, did I, Charlie?

2         MR. VAN BEKE:  I guess not.

3         MR. FLAHERTY:  Your Honor, I am sorry, it is

4    late and we have one more thing to make sure it is

5    crystal clear on.  There is approximately a

6    million-five remaining, it is the claim that Mr. Van

7    Beke's Counsel made -- Mr. Van Beke made on behalf

8    of his client that is now embodied in 21(A), that

9    amount of money, the million-five.  We contend that

10   that amount of money is not due to Coolidge.  We are

11   waiving our objections as to the procedure, as to

12   the timing, as to the discovery and all of that kind

13   of stuff.  What we are not waiving, and I want this

14   to be clear to Mr. Van Beke, is our claims that that

15   million-five is not due substantively under the

16   terms of the note.  That is what remains to be

17   litigated.

18        MR. VAN BEKE:  Before Winchester?

19        MR. FLAHERTY:  Before Winchester.  Once Mr.

20   Winchester decides there will be no more objection

21   to that, but we do reserve the right to make the

22   objection substantively to what he decides on the

23   million-five that remains that you are contending is

24   due pursuant to the terms of the note.

25        MR. VAN BEKE:  It sounds like you took back

1        what you gave me in the first statement.

2        MR. FLAHERTY:  Maybe I just stated it more

3        clearly and I apologize for that, it is late in the

4        day and I'm trying my best.  What I want to say is

5        this, that we claim the million-five you are

6        claiming is not due and owing pursuant to the note.

7        We can make the presentation to Master Winchester

8        that it should not be due and owing.

9        MR. VAN BEKE:  Yes.

10       MR. FLAHERTY:  That's all.  And we're not

11      waiving any objection that on the substance it is

12      not due and owing.  We are waiving the objection

13      that Master Winchester is going to decide it, we are

14      waiving objection to the timeliness, to the hearing

15      procedure, to all of discovery, all of that stuff,

16      not however on the merits whether it is due and

17      owing for that million and five.

18      MR. VAN BEKE:  Only as to the Winchester

19      proceeding?

20      MR. FLAHERTY:  Only as to the Winchester

21      proceeding, that's right.

22      MR. VAN BEKE:  Let me ask for one other thing

23      then while we're at it since we're waiving, since we

24      too are waiving objections, and since this is an

25      agreement between the parties, I think I would

1    like -- I think we would be due for mutual releases

2    that upon these payments that any claims with regard

3    to the attorneys' fees, the amounts of attorneys'

4    fees, or the amounts claimed for the amount due

5    under the note are released; that is I don't want to

6    be faced with we settle this and then we get another

7    lawsuit that says you asked for too many attorneys'

8    fees or you asked for too much principal and

9    interest and now we have a cause of action against

10   you for that. We want everything to do with the

11   note and the amounts due under the note to be

12   totally and utterly resolved and put to bed, period.

13        MR. FLAHERTY: Now, that is a problem, Your

14   Honor, and don't misunderstand, it is not that we're

15   planning on lawsuits. Here is the problem with

16   this; we tried to settle the whole matter, we

17   couldn't do that, the reason we are back before the

18   Court when we came back in after the lunch hour and

19   we reported to you is this is not a settlement of

20   the matter. It is a mechanism that pursuant to

21   which we are going to satisfy by agreement in the

22   method we have talked about the amounts due under

23   the note period, nothing else, no releases, no

24   promises nothing, period.

25        MR. VAN BEKE: I am only asking for that we

1       would be entitled to a release as to the process

2       that we have gone through to determine the amount of

3       the principal and interest and the attorneys' fees

4       under the note.  Not the breach of contract and tort

5       and conspiracy claims that you have raised in your

6       complaint.

7               MR. FLAHERTY:  I'm sorry, I can't agree with

8       that, no releases, it is just too complicated.

9       We're paying the note.  Period.

10              MR. VAN BEKE:  Are you ready for another

11      lawsuit, Judge, because I bet there is going to one

12      coming.

13              MR. FLAHERTY:  It's not -- we tried that, we

14      tried the release approach, and I don't want to be

15      critical, they didn't want to go that way; we're

16      paying the note by agreement.  Period.

17              THE COURT:  Can you accept that, Mr. Van Beke?

18              MR. VAN BEKE:  I think you understand what I am

19      afraid of is that we are going to now be hit with a

20      lawsuit saying that we acted improperly in the

21      Winchester process in terms of establishing the

22      amount due under the note and the attorneys' fees.

23              THE COURT:  Can you Gentleman tell me that

24      won't happen?

25              MR. FLAHERTY:  Your Honor, I don't mean to seem

1    hesitant to say that because it sounds like that is

2    our plan, it honestly is not, it is just a whole

3    different wrinkle.  This last wrinkle is brand new,

4    it is and I am not suggesting Mr. Van Beke is guilty

5    of bad faith here in the slightest, but it is a

6    wholly different concept than what we spent the

7    entire afternoon talking about.  We expressly stated

8    I don't know how many times out in the corridor, no

9    release.  Now in the eleventh hour, no, we want a

10   release too.  All of a sudden the scope of the

11   release and what it involves, I begged people to

12   talk about releases and they didn't want to, so we

13   went a different way three hours ago.

14        MR. VAN BEKE:  No, we were talking about not

15   releasing the lawsuit that was filed.

16        MR. FLAHERTY:  Period, no releases.

17        MR. VAN BEKE:  And now what I'm talking about

18   is, you know, this whole fight over the amount due

19   under the note isn't even part of the lawsuit but

20   somehow it got appended to the lawsuit.  The

21   underlying lawsuit had to do with supposed

22   defalcations by First Union and then later by us as

23   outlined in the complaint.  And then this note

24   litigation, quote, unquote, got engrafted onto that

25   case and I just want to make sure that the note

1    litigation as it were, the amount due under the note

2    both principal and interest and attorneys' fees is

3    totally and utterly and completely, fully resolved

4    forever, ever and ever, period.

5         MR. FLAHERTY:  I just have to say no releases.

6    Period.  We are not settling the lawsuit.

7         MR. VAN BEKE:  I'm not asking you to settle the

8    lawsuit.

9         MR. FLAHERTY:  This is just an 180 degree turn.

10        MR. VAN BEKE:  It is not.  This is trying to

11   get rid of -- we were trying to get rid of, as they

12   kept saying over and over again to resolve the note,

13   resolve the amounts due under the note and get a

14   release for it.

15        MR. FLAHERTY:  With respect, Mr. Van Beke, that

16   is what we tried to do before we hit an impasse.

17   Then we came back in the room and had a discussion

18   with the Court and it could not have been clearer,

19   this is a mechanism to not settle the case, it is a

20   mechanism to satisfy the obligations of the note.

21   And, now, here it is -- well, it is just not --

22        MR. BLACK:  That idea is brand new.

23        MR. FLAHERTY:  Now, if you want to settle the

24   case, settle the case, if what you don't want to

25   settle the case, which is what you don't want to do,

1    let's just pay off the note; that is why we are

2    here.

3         MR. VAN BEKE: I have been involved in this for

4    five years now, Judge, I know we have got another

5    litigation. That refusal to give a simple release

6    as to payoff amount being denied tells me we have

7    got years worth of litigation ahead of us on that.

8         MR. FLAHERTY: Respectfully, what it tells me

9    is this, what it tells me is that the last two hours

10   have been spent talking about something and now it

11   is the last minute and this is the kind of thing,

12   frankly, that does lead to the disputes. We had --

13   we had what could not have been clearer,

14   respectfully, what we were doing, we were paying the

15   note and now all of a sudden we are talking about

16   the scope of release and what to include and

17   whatnot. You know, we have to make a decision, Mr.

18   Van Beke, do you want to settle the case or get paid

19   on the note? You can't do both.

20        Basically what we're doing here, and the reason

21   why this is so remarkable, is that we come back into

22   Court after trying to settle the case, which you

23   won't agree to, you're right, okay, we're going to

24   pay the note, we're going to pay every single penny

25   without objection to what Mr. Winchester says, a

1    procedure he said he wanted.  This is the same

2    speech I gave two hours ago.  You said you wanted,

3    we said, okay, we'll do it, we will give you every

4    nickel the day after the final report and now they

5    are saying they want something else.

6         Talk about fulminating litigation, I don't know

7    what that is but that, but fulminating litigation.

8         (Brief pause.)

9         MR. VAN BEKE:  The deal as initially described,

10   and that is without the release, while not

11   necessarily acceptable, I think it is one that we

12   will accept.

13        MR. FLAHERTY:  Great.  I think we're done then.

14        THE COURT:  The Court expressly approves the

15   deal that has been recited and placed in the record,

16   stands releases.

17        MR. FLAHERTY:  Thank you, Your Honor.

18        MR. BLACK:  Thank you.

19        (Hearing adjourned.)

20

21

22

23

24

25

C E R T I F I C A T E

STATE OF TENNESSEE

COUNTY OF KNOX

I, Rebekah E. Archer, Registered Professional Reporter and Notary Public, do hereby certify that I reported in machine said proceedings had in open court; that the foregoing pages were transcribed under my personal supervision and constitute a true and accurate record of the said proceedings.

I further certify that I am not an attorney or counsel of any of the parties, nor an employee or relative of any attorney or counsel connected with the action, nor financially interested in the action.

Witness my hand and seal, this the 7th day of March, 2005.

Rebekah E. Archer, RPR, CSR
and Notary Public
My Commission Expires:  10/26/06