IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | |
|---|---|
| MARTIN E. O'BOYLE and CATHERINE O'BOYLE, both individually and as General Partners in New Midland Plaza Associates, a Tennessee General Partnership, Commerce Partnership, No. 1147, a Florida General Partnership, and Partnership No. 1171, a Florida General Partnership, NEW MIDLAND PLAZA ASSOCIATES, COMMERCE PARTNERSHIP NO. 1147 and COMMERCE PARTNERSHIP NO. 1171, Florida General Partnerships,<br><br>  Plaintiffs,<br>v.<br><br>SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., ROSS D. COOPER and MARK S. GUBERMAN,<br><br>  Defendants. | No. 3:09-CV-00169 |

**SUR-REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, Martin E. O'Boyle, et al, by and through counsel, submit this Sur-reply Brief in opposition to defendants' Motion to Dismiss plaintiffs' complaint under R. 12(b)(6) of the Federal Rules of Procedure.

LEGAL ARGUMENT

POINT I

DEFENDANT'S ATTEMPT TO ADJUDICATE THE FACTS ON THIS F.R.C.P. 12b(6) MOTION IS INAPPROPRIATE AS NO DISCOVERY HAS BEEN CONDUCTED AND THE COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS ON ALL MATERIAL ELEMENTS TO SUSTAIN PLAINTIFFS' VIABLE LEGAL THEORY OF MALPRACTICE.

In Point I of defendants' Reply Brief they argue that plaintiffs have failed to prove that the Shulman firm by and through Mr. Levin had the authority to bind individual defendants Guberman and Cooper.

Plaintiffs' Amended Complaint alleges legal malpractice against defendants Cooper, Guberman and the firm of Shulman Rogers. (Count One, ¶13 through 15). Both Mr. Guberman and Mr. Cooper were at the time alleged, employed attorneys with the law firm.

In Count One, ¶26 through 29, plaintiffs recite and identify the particular tolling agreements entered, and aver that:

> 28. Plaintiffs allege that the tolling agreement and extensions apply equally to the Shulman Rogers firm and to the individually named defendants, Guberman and Cooper, and that Cooper signed the original agreement and both Guberman and Cooper were employees and/or agents of Shulman Rogers at the time of the alleged malpractice.

Moreover, plaintiffs specifically allege the authority of Martin Levin, as the Shulman Rogers principal, to act on behalf of his employees into the future:

> 29. Plaintiffs further allege the Shulman Rogers representative, Martin Levin, on at least one occasion, advised plaintiffs to deal only with him concerning the tolling agreement and the extensions with regard to Cooper and upon information and belief, Guberman.

Plaintiffs have stated the factual predicate upon which that apparent authority is based. The principal of Shulman Rogers, Martin Levin, articulated what plaintiffs understood to be "manifestations", "traceable to the principal"; in this instance, the individually-named defendants.

In sum, plaintiffs submit that a threshold showing of authority is explicit, and must therefore be factually developed by way of discovery.

## POINT II

DEFENDANTS ERR IN CONCLUDING THAT EQUITABLE ESTOPPEL IS INAPPLICABLE BY VIRTUE OF THE FACTS ALREADY OF RECORD AND THEIR RELIANCE UPON <u>MASTILIAR V. NEW SHELBY DODGE, INC.</u>

Defendants argue that "plaintiffs' estoppel argument has no merit". (Defendants' Reply Brief, p7). Defendants liken the factual averments in the complaint and the communications of Mr. Levin (Exhibit A, plaintiffs' initial brief in opposition), to mere "allegations of settlement negotiations or promises to negotiate . . . ". (Defendants DB-7).

Plaintiffs do not rely upon mere allegations of settlement negotiations or promises to negotiate. The direct contrary is established by the direct admissions of Mr. Levin: "I haven't . . . have not heard back from the carrier . . . I won't screw you". In three simple phrases, Mr. Levin confirmed not only that the parties were in settlement negotiations, but further that affirmative and real efforts were being pursued in order to settle. Plaintiffs obviously took Mr. Levin at his word. Mr. Levin's confirmation that he had submitted the claim to his insurance carrier and was awaiting a response, is clear evidence of "encouraging the plaintiffs not to pursue legal remedies" (DB-7) because of those very settlement negotiations. Defendants' attempt to recast what were purported good faith efforts at settling into nothing more than a "allegation of settlement negotiation" is belied by the record presented.

As the very case relied upon by the defendants directs:

> Equitable estoppel may be applied to prevent a defendant who was actively induced the plaintiff to delay filing suit from asserting a "statute of limitations defense". <u>Hardcastle v. Harris</u>, 170 S.W.3d 67, 84 Tenn. Ct. App. 2004. However, in determining whether to allow the invocation of equitable estoppel, courts must "examine the facts and circumstances of the particular case . . . to determine whether defendant's conduct is sufficiently unfair or misleading to outweigh the public policy favoring statutes of limitation". <u>Id.</u>, at 85. (citations omitted). Specifically, courts

3

must focus "on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct." Id., (citations omitted). To prevail, a "plaintiff must identify specific promises, inducements, representations, or assurances by the defendant that reasonably induce the plaintiff to delay filing," because evidence of mere vague statements or other ambiguous conduct by defendant will not suffice . . .

Mastiliar v. New Shelby Dodge, Inc. 2005 W.L. 3017408 at *3.

Unlike the facts in Mastiliar, here defendants were promising that a settlement would be reached. Further, in this case, defendants did promise not to invoke the Statute of Limitations period during the negotiation period. Indeed, defendant Shulman Rogers did precisely the opposite in this case. The specific information being conveyed to the plaintiffs was that settlement negotiations were serious and were being actively and affirmatively pursued by Mr. Levin with "the carrier". Moreover, the defendants were entering into tolling agreements for the express purpose of continuing settlement negotiations.

Contrary to the defendant's argument in reply, the elements of equitable estoppel are constituted.

## POINT III

ASSUMING APPLICABILITY OF THE TENNESSEE STATUTE OF LIMITATIONS, DEFENDANTS' ARGUMENT THAT FEES AND COSTS AWARDED IN SEPTEMBER OF 2005 CONSTITUTES A "LEGALLY COGNIZABLE INJURY" IS FACTUALLY AND LEGALLY WRONG.

The Order of September 27, 2005 was entered pursuant to the contractual agreements of the parties as contained in the "loan documents". (Exhibit J, Special Masters First Supplementary Report, filed February 17, 2005, pp12-13). The Special Masters Report makes clear that the award of fees and costs is based upon existing contractual obligations of the parties, unconnected to any alleged negligence or

4

misconduct of the plaintiff or its attorneys. The obligation to pay fees and costs as ordered therein is not based on any evaluation of the litigation conduct or alleged malpractice of the defendants. It was an Order to pay costs and fees given the express agreements, amended agreements, loan documents, notes and the prior bankruptcy proceedings.

The plaintiffs are not "sanctioned" until long after the Court's final judgment had entered, dismissing the plaintiff's cause of action on December 14, 2005. The sanctions suffered because of that Order of final dismissal were not imposed until November 2, 2006. As even defendants acknowledged in their initial Memorandum (DB-2), in September of 2005 ". . . the trial court imposed legal fees and costs due under the loan documents to the lender against plaintiffs in an amount in excess of $1,500,000".

The Special Master's first supplemental report identified and evaluated the appropriateness of fees and costs assessed against the plaintiffs by dividing the types of fees into seven categories. (Exhibit J, pp24-28). All of those categories with the exception of Category 4 (Exhibit J, p27), are exclusively devoted to loan documents and bankruptcy proceedings.

> Category 1 (Exhibit J, p24) identifying First Union fees to enforce remedies under the loan documents prior to New Midland bankruptcy;
>
> Category 2 (Exhibit J, p25), identifying First Union fees in defending its rights pursuant to loan documents in the New Midland bankruptcy prior to the sale of loan by First Union;
>
> Category 6, (Exhibit J, p26), identifying First Union fees relating to the Tennessee state case following the loan sale;

5

Category 7 (Exhibit J, p26) identifying fees in reopening the Riverview Tower bankruptcy;

Category 3 (Exhibit J, p27), identifying First Union fees under loan documents and because of the New Midland bankruptcy after the loan sale; and

Category 5 (Exhibit J, p28), identifying fees for Alcoa in reopening the New Midland bankruptcy litigation on the terms of the loan documents.

The Category 4 fees (Exhibit J, p27), allowed Alcoa fees for defending the Tennessee state court litigation. That too, however, was by virtue of the contract existing between the parties and the continuation of a loan payoff process emanating from agreements reached over a three month period, January through March 2005. None of it was as a result of any sanction imposed because of the validity or efficacy of the plaintiffs' cause of action ultimately dismissed December of 2005.

Defendants argue in reply that an award of fees and costs <u>before final judgment</u> triggered the running of the statute of limitations since those Orders were the type of "legally cognizable injury" that put plaintiffs on notice of the malpractice and were directly connected to the malpractice. Plaintiffs respectfully submit that the defendants are wrong in both conclusions.

The record on this motion clearly confirms that the award of fees and costs in September of 2005 were factually and legally separate and distinct from the cause of action filed by New Midland against First Union. As the Special Master explained in his final report filed September 22, 2005 (Defendants' Exhibit I, p2), the final hearing on the "attorney fees claims asserted by Alcoa Calderwood LLC ("Alcoa") had been previously "identified in the preliminary report and supplements thereto".

6

Defendants continue to label the contractual award of fees and costs arising out of those loan documents as "sanctions" that somehow put plaintiffs on notice of legal malpractice. Defendants fail to recognize that the award of fees and costs were wholly independent of and unconnected with the causes of action being asserted by New Midland against First Union. The Special Master's Preliminary Report and Status of Proceedings, filed February 8, 2005, made crystal clear that:

> Pursuant to the aforesaid Order of reference, this court nominated, designated and appointed Special Master J. Michael Winchester (the "Special Master") "to determine the amount of any and all funds actually due and owing Alcoa by New Midland from January 20, 2000 to the date of the Special Master's Report, <u>all pursuant to the provisions of the loan documents</u> as ordered by the United States Bankruptcy Court by the Southern District of Florida." . . .

(Exhibit H to Defendants' brief, pp1-2)(emphasis added).

As comprehensively reviewed by the Supreme Court of Tennessee in <u>Carvel v. Bottoms</u>, 900 S.W.2d 23, 28:

> The foregoing discussion of <u>Ameraccount</u>, <u>Security Bank</u> & <u>Chambers</u> establishes that the "legal malpractice discovery rule" is composed of two distinct elements: (1) the plaintiff must suffer, pursuant to the <u>Ameraccount</u> dictate, an "irremediable injury" as a result of the defendant's negligence, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury <u>was caused by the defendant's negligence</u>. . .

While plaintiffs indeed suffered an "injury" by virtue of the September 2005 assessment of fees and costs, that injury was not based upon any known or believed malpractice of the defendants. The "legally cognizable" injury suffered by the plaintiffs did not come to fruition until a final judgment was granted by the Court on December 14, 2005. Plaintiffs injuries at that point and only at that point were " . . .sufficient to put a reasonable person on notice that [they had] suffered an injury as a result of wrongful conduct". <u>Carvel</u>, <u>Ibid.</u>, at 29. Clearly, when the Court thereafter assessed over

7

$1,000,000 in actual "sanctions" against New Midland almost a year thereafter, a second "legally cognizable injury" or "actual injury" occurred pursuant to Tennessee law.

Defendants' attempt to establish a "legally cognizable injury" by virtue of the court's September 2005 assessment of fees and costs, unconnected to the actual injury caused plaintiffs by dismissal of the lawsuit, and sanctions thereafter, must fail.

In sum, whether the analysis is pursuant to Tennessee or Maryland law, plaintiffs' complaint is timely. Based upon the foregoing as well as the Statement of Facts and Law previously submitted by the plaintiffs, the instant cause of action in malpractice did not accrue until the entry of final judgment on December 14, 2005.

Respectfully submitted this 18th day of September, 2009.

        s/Bryan L. Capps
        Bryan L. Capp (BPR 19999)
        Gilreath & Associates
        550 Main Avenue, Suite 600
        Knoxville, TN 37902
        (865) 637-2442
        bcapps@sidgilreath.com

        Louis M. Barbone
        Christian M. Scheuerman
        Jacobs & Barbone
        1125 Pacific Avenue
        Atlantic City, NJ 08401
        (609) 348-1125
        ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

    I hereby certify that on the ___18th___ day of ___September___, 2009, a copy of the Sur-Reply Brief In Opposition to Defendants' Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. Mail. Parties may access this filing through the Court's electronic filing system.

                                              GILREATH & ASSOCIATES

                                              BY: ___s/Bryan L. Capps___

9

Case 3:09-cv-00169   Document 34   Filed 09/18/09   Page 9 of 9   PageID #: 716